## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:22-cr-00282** |
| | ) | **JUDGE RICHARDSON** |
| | ) | |
| **GLEN CASADA and** | ) | |
| **CADE COTHREN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## GLEN CASADA'S SUPPLEMENTAL BRIEF
## IN SUPPORT OF MOTION TO DISMISS

Pursuant to the Court's Order entered September 20, 2023 (Doc. 88), Defendant Glen Casada submits his supplemental brief in support of the Motions to Dismiss filed by both Defendants (Doc. 59, 65, 90). As discussed in detail below, the "deprivation of the intangible right to honest services" theory of fraud prosecutions has been expanded and contracted for decades. Throughout its jurisprudence, there is a consistent lack of clarity and uniformity as to what conduct violates the "honest services fraud" statute – 18 U.S.C. §1346. Casada has moved to dismiss Counts 5-10 of the Indictment, alleging Honest Services Wire Fraud, for multiple reasons including vagueness. Without waiver, and in compliance with the Court's Order, Casada submits his supplemental brief as follows.

1

## I.   18 U.S.C. § 1346 is unconstitutionally vague.

"Honest-services fraud and this Court's vagueness jurisprudence are old friends." *Percoco v. United States*, 598 U.S. 319, 333 (2023) (J. Gorsuch and J. Thomas, concurring). This Court is not the first to address the lack of clarity in the elements of this crime. Since its enactment in 1988, the honest services mail/wire fraud statute, 18 U.S.C. § 1346, has been consistently critiqued as being unconstitutional by all levels of the federal judiciary. The origins of the honest services doctrine itself (and its unconstitutional reach) range back even before the enactment of § 1346. The reasons for restricting its reach exist today as much as they did when the Court first limited the statute. The persistent lack of clarity on every aspect of this statute renders it vague and unconstitutional.

To satisfy constitutional due process and avoid vagueness, "a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Skilling v. United States*, 561 U.S. 358, 402 (2010). "A vague law is no law at all" because it violates due process by failing to put ordinary people on notice of "what the law demands of them." *United States v. Yu Zhou*, No. 2:19-CR-163(1), 2020 WL 708391, at *2 (S.D. Ohio Feb. 12, 2020) (quoting *United States v. Davis*, 139 S. Ct. 2319, 2323 (2010)). The judiciary can attempt to salvage a vague statute by interpreting its terms narrowly to only proscribe the "general class of offenses to which the statute is directed." *Skilling*, 561 U.S. at 406. The Supreme Court has attempted to constrain §1346 to a narrow class of offenses, but the language chosen by Congress (and Congress's rejection of the explicit pleas to remedy its vagueness) has allowed mass confusion and contradiction that has led to impermissible overreach by the federal government.

Congress has proscribed fraud since 1872. Since the early 1900s, federal law outlawed fraud committed via mail or wire, codified at 18 U.S.C. §§ 1341 and 1343, respectively. Despite

2

language in these statutes requiring a *tangible* loss of property or money, federal prosecutors and courts took advantage of the statutes' vagueness to claim they federally criminalize schemes to defraud another of his "intangible rights," including the intangible right to honest services.

The Supreme Court began its attempts to confine the amorphous concept of honest services with its decision in *McNally v. United States*, 483 U.S. 350 (1987). Prior to *McNally*, the existing federal fraud statutes were mail (18 U.S.C. § 1341) and wire (18 U.S.C. § 1343). While the language of these statutes appeared to be restricted to deception that caused depriving another of money or property, creative litigation expanded these statutes' reach to cover fraud to deprive another of "intangible things." *Skilling*, 561 U.S. at 400. In 1987, *McNally* "stopped the development of the intangible-rights doctrine in its tracks." *Skilling*, 561 U.S. at 401. The Supreme Court restricted the scope of the mail/wire fraud statutes to fraudulent schemes that deprive another of property rights in order to avoid "leav[ing] its outer boundaries ambiguous and involve[ing] the Federal Government in setting standards of disclosures and good government for local and state officials." *Id.*

"Congress responded swiftly. The following year, it enacted a new statute [18 U.S.C. § 1346] specifically to cover *one* of the 'intangible rights' that lower courts had protected prior to *McNally*: 'the intangible right of honest services.'" *Skilling*, 561 U.S. 358, 402 (2010) (emphasis added). Congress specifically chose to codify this principle by inserting in 18 U.S.C. § 1346, "[f]or the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." These 28 words have led to over 30 years of varying and contradictory interpretations of nearly every element involved in the offense.

In its first opportunity to construe §1346, the Supreme Court declined, but Justice Scalia foreshadowed the looming problems of vagueness created by the statute's language. Justice Scalia

echoed the concerns of *McNally* that the overly expansive language of the statute would violate federalist principles by allowing the federal government "to creat[e] ethics codes and set[] disclosure requirements for local and state officials" by attempting ... to define the fiduciary duties owed from these officials to their constituents." *Sorich v. United States*, 555 U.S. 1204, 1310 (2009) (Scalia, J., dissenting).

In 2010, the Supreme Court accepted certiorari and *Skilling* served as the Court's first opportunity to interpret §1346. There, the appellant contended that §1346 was unconstitutionally vague because it fails to define the prohibited behavior and is instead a "standardless sweep." *Skilling*, 561 U.S. at 403. The Court "acknowledge[d] that Skilling's vagueness challenge has force," due to the lack of consistency and broad federal overreach in "honest services" cases before *McNally*. *Id.* at 405. However, a narrow majority salvaged the statute by restricting it to criminalize only those "who, in violation of a fiduciary duty, participated in bribery or kickback schemes." *Skilling*, 561 U.S. at 408. Justice Ginsburg, writing for the majority, explicitly rejected undisclosed self-dealing and conflicts of interest by public officials as a violation of §1346, restricting it to only one intangible right—the right of honest services—and defining honest services as refusing to engage in bribery or kickback schemes.

Justice Scalia was still not satisfied, concurring in part with Justices Thomas and Kennedy, but holding that unanswered vital questions remained, and as such the statute was unconstitutionally vague relating to the definition, formation, application, source, and breach of this "fiduciary duty." *Id.*, 561 U.S. at 416–20 (Scalia, J., concurring). The lack of clarity on these questions led Justice Scalia to opine the statute was unconstitutionally vague. *Id.*

The Supreme Court has continued to refine the doctrine in an attempt to salvage the statute's constitutionality. In 2016, the Supreme Court further refined §1346 to avoid vagueness

4

by defining the mandated "bribery" under *Skilling* as it is defined under 18 U.S.C § 201 and using the "more bounded interpretation" of the corresponding element of "official act." *McDonell v. United States*, 579 U.S. 550, 567 (2016). Then, in 2020, the Court reiterated that even acts of deception, dishonesty, non-disclosure, and self-dealing are not prohibited by the federal fraud statutes because such conduct is not a bribe or kickback proscribed by §1346. *Kelly v. United States*, 140 S. Ct. 1565, 1571. Reaching back to the original considerations in *McNally*, the Supreme Court held that short of bribery or kickbacks, states should be left to police their own standards of disclosure and "good government." Then, this year, the Supreme Court further refined the contours of the doctrine when it reiterated that the intangible right to honest services was the *only* intangible right (refusing to expand the fraud statutes to the intangible "right to control"), *Ciminelli v. United States*, 598 U.S. 306, 313–16 (2023), and that a private person only owes a fiduciary duty to the public in narrow circumstances, *Percoco v. United States*, 598 U.S. 319, 330–31 (2023). The current state of §1346 is that the statute is nothing more than an "aspirational phrase" that fails to provide the notice mandated by the Constitution. *Percoco*, 598 U.S. at 337 (Gorsuch, J. and Thomas, J., concurring in judgment).

The Supreme Court has reasoned that the federal fraud statutes are unconstitutionally vague when their "outer boundaries [are] ambiguous." *Skilling*, 561 U.S. at 401. The history of decisions show that is true of §1346 today. For thirteen (13) years, the language of §1346 has left the leading legal minds in the country to state: "What is the criterion of guilt?" *Skilling*, 561 U.S. at 422 (Scalia, J. concurring in part and concurring in judgment) and "[t]o this day, no one knows what 'honest-services fraud' encompasses." *Percoco*, 598 U.S. at 333 (Gorsuch, J. and Thomas, J., concurring in judgment) Regardless of whether it is uniformly held as unconstitutional, it is undisputed that the only way it *is* constitutional is to construe it with the utmost and absolute narrow precision to only

5

criminalize "core bribery or kickbacks," not acts of dishonesty. The Indictment in this case fails to do that. Instead, the present Indictment only alleges undisclosed, immaterial, unofficial, and harmless self-dealing.

## II.    The Elements of Honest Services Wire Fraud

Importantly, §1346 is *not* itself a new criminal offense—it expands one of the elements required to prove mail (§1341) or wire (§1343) fraud. 18 U.S.C. §1346; *Ciminelli*, 598 U.S. at 313 (referring to the §1346 as an amendment to the federal fraud statutes). The elements of wire fraud are:

(1)    That the defendant knowingly participated in a scheme to defraud in order to deprive another of money or property;

(2)    That the scheme included a material misrepresentation or concealment of a material fact;

(3)    That the defendant had the intent to defraud; and

(4)    That the defendant used wire in interstate commerce in furtherance of the scheme.

6th Cir. Pattern Instruction 10.02.[1]

Before *McNally*, these elements were impermissibly stretched to reach defendants who engaged in fraud, but such conduct only resulted in an intangible loss, while the statutory language mandated a "loss of money or property." 18 U.S.C. §§ 1341, 1343. Thus, by expanding the element of "scheme or article to defraud" to include "deprive another of the intangible right of honest services," the government could criminalize acts that did not result in the loss of money or property by indicting defendants (as the Government did here) for honest services mail/wire fraud -

---

[1] Casada submits that the Government cannot sustain Counts 5–10 on these elements alone because the Indictment fails to allege that the Defendants' conduct included a material misrepresentation. See Doc. 59, 65, 90.

committing mail or wire fraud where the deprivation to another is of *the* intangible right of honest services." 18 U.S.C. § 1346 (emphasis added); *Skilling*, 561 U.S. at 358 (distinguishing that in honest services fraud "the offender profit[s], the betrayed party suffer[s] no deprivation of money or property; instead, a third party, who ha[s] not been deceived, provide[s] the enrichment.").

This expansion via §1346 of federal fraud criminal liability, as outlined above, sprouted new elements of a fiduciary duty to another that is breached by the accused engaging in actual, defined, "classic" bribery and kickbacks. Drawing from the governing law, and as discussed in greater detail below, the elements of honest services wire fraud are:

(1)    That the defendant knowingly participated in a scheme to defraud;

(2)    In order to deprive another to whom he owed a fiduciary duty of the intangible right of honest services;

(3)    Defendant accepted bribes or kickbacks from a third party who had not been deceived;

(4)    In furtherance of that scheme, the defendant undertook an official act;

(5)    The scheme included a material misrepresentation or concealment of a material fact;

(6)    That the defendant had the intent to defraud; and

(7)    That the defendant used wire in interstate commerce in furtherance of the scheme.

**A. The statutory language and governing case law require the existence of a relationship that holds both the right (of the "victim") and fiduciary duty (of the "actor") to not engage in bribery or kickbacks as defined by federal law.**

The precise contours of the type, source, scope and even necessity of a "duty" for honest services wire fraud is an open question. Less than six months ago, Justice Gorsuch opined that, "even 80 years after lower courts began experimenting with the honest-services-fraud theory, no

7

one can say what sort of fiduciary relationship is enough to sustain a federal felony conviction and decades in federal prison." 598 U.S. 319, 337 (2023) (Gorsch, J., concurring in judgment). *Skilling* is often referenced as the case that mandated fiduciary duty by defining a person as committing honest services wire fraud as one "who, in violation of a fiduciary duty, participated in bribery or kickback schemes." *Skilling*, 561 U.S. at 407. However, as pointed out by Justice Scalia in that same case, if this duty is required, none of the pre-*McNally* honest services mail/wire fraud cases for public officials nor private actors "defined the nature and content of the fiduciary duty central to the 'fraud' offense" nor the source of any such duty." *Id.* at 416-20 (J. Scalia, concurring). This Court indicated that it was similarly unpersuaded that the *Skilling* opinion even mandated a duty. (Doc. No. 88, Page ID 465, n.1).

> **i.   Fiduciary duty is an essential element.**

To the extent elements of honest services wire fraud can be gleaned from the contradictory jurisprudence, *Skilling* established that the existence and breach of a fiduciary duty is an element. The "fiduciary duty" element has been recognized by both the Supreme Court and District Courts in the 6th Circuit. *Percoco*, 598 U.S. at 328–330; *United States v. Zhou*, 2020 WL 708391, at *4 (S.D. Ohio Feb. 12, 2020) ("Hence, *Skilling* made clear that honest-services wire fraud requires both a fiduciary duty and a bribery or kickback scheme."). Importantly, the government concedes it is required. (Doc. No. 76 at 4); *McDonnell*, 579 U.S. at 562 (allowing the elements to be defined by an agreement among the parties).

Support for the requirement of a fiduciary duty is also found in the statutory language. Section 1346 expands wire fraud to include "a scheme or article *to deprive another* of the intangible *right* of honest services." 18 U.S.C. §1346 (emphasis added). As this Court noted, the statute's language implies the existence of a duty and relationship between "another" who

possesses a "right." (Doc. No. 88, Page ID #466, n.3). The language also requires a breach of that duty resulting in a "deprivation."

ii.   **In the Sixth Circuit, the source of the requisite fiduciary duty is federal law, and the scope depends on the status of the actor as a public official or private individual and those interacts with.**

Predictably, there is a lack of uniformity amongst Circuit courts regarding the fiduciary duty owed, adding to the vagueness issues plaguing the honest services wire fraud doctrine. *Percoco v. United States*, 598 U.S. at 334–36 (J. Gorsuch and J. Thomas, concurring). In the Sixth Circuit, however, the source of the fiduciary duty is federal law. *U.S. v. Frost*, 125 F.3d 346, 366 (6th Cir. 1997).

While some courts ground the source of the fiduciary duty in other places, any source other than Federal law would contradict the nearly 40-year development of honest services fraud being narrowly tailored to prevent impermissible federal overreach. For example, some courts hold that the source comes from state law. *See, e.g.*, *United States v. Brumley*, 116 F.3d 728, 734 (5th Cir. 1997). However, sourcing the confines of the fiduciary duty for a federal fraud statute from state law would not only defy the *McNally* and *Skilling* precedent (and Sixth Circuit law, in this case), it would violate the Tenth Amendment principles of federalism.

The Tenth Amendment limits the power of the Federal Government and reserves powers to the states. *New York v. United States*, 505 U.S. 144, 157 (1992). The American federalism model of government "establish[es] two orders of government, each with its own direct relationship, its own privity, *its own set of mutual rights and obligations to the people who sustain it and are governed by it*." *U.S. Term Limits, Inc. v. Thorton*, 514 U.S. 779, 838 (Kennedy, J., concurring)

9

(emphasis added). The Supreme Court has previously rejected attempts to construe the mail fraud statute in a way that would compromise federalism:

> We resist the Government's reading of [the mail-fraud statute] as well because it invites us to approve a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress. . . unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance' in the prosecution of crimes.

*Cleveland*, 531 U.S. at 24–25 (internal quotations and citations omitted).

The Sixth Circuit has reasoned on §1346 specifically that "[un]less Congress conveys its purpose clearly, we cannot—indeed the Court tells us we should not—upset the federal/state balance in the prosecution of crimes to hold [defendant] accountable for these [alleged violations of state law]." *Sadler*, 750 F.3d at 592 (6th Cir. 2014) (internal citations and quotations omitted).

It would be impermissible for the Government to proceed under the theory that a federal prosecution via an extremely narrowly tailored federal law can proceed against a *State* elected official (or private individual) based upon a duty founded in *State* law. The Indictment already alleges that Defendant Casada was a State official, owed a duty to the State and its citizens, and harmed the State and its citizens. If §1346 was expanded to find the source of the duty and basis for violation of it in *State* laws, there would be no connection to the federal criminal statutes. To maintain the constitutionality, narrow construction, and federalism principles between the federal and state governments, the source and basis for breach of duty cannot come from state law.

Internal ethical codes cannot create the basis of an element for a federal crime, either. The Supreme Court has consistently rebuked the imposition of the federal government to use the federal fraud statutes to "create ethics codes and set[] disclosure requirements for local and state officials," *Sorich v. United States*, 555 U.S. 1204 (denying petition for certiorari) (Scalia, J., dissenting) (noting it was "quite irresponsible to let the current chaos prevail") to "set standards of

10

disclosure and good government for state and local officials," *Ciminelli*, 598 U.S. at 316, or to "criminaliz[e] all acts of dishonesty by state and local officials." *Kelly*, 140 S. Ct. at 1571. To allow federal law to enforce breaches of ethical codes that do not have the force or consequence of any law, and are more akin to a civil wrong, is an unconstitutional overreach of the federal fraud statutes.

But that is exactly what the Government has done in the present prosecution. Here, the Government's actual allegations (differing from its usage of mere terms) assert that the "Permanent Rules of Order for the 111th General Assembly" created a duty of conduct that Casada violated with his undisclosed self-dealing. These Rules *are not even laws* and cannot establish the basis for a fiduciary duty in federal law for a federal crime under the federal honest services statute. As discussed herein, despite claiming that Defendants engaged in "bribery and kickbacks," the Indictment describes the non-disclosure of a conflict of interest and violation of a code of ethics; neither is a federal crime.

### 1. Public Officials

The duties of public officials, and rights of those they interact with, evolve depending on the status of each party to the relationship.

Public officials acting in their capacity and within the scope of their duties have a fiduciary duty to the government and the public it serves. *Percoco*, 598 U.S. at 1138. To the extent that duty can be described using *federal* law in the context of *federal* honest services wire fraud to constitute a *federal* crime, it is the duty that corresponds to the intangible right of honest services—it is the duty to not deprive them of that right by participating in a scheme of bribery or kickbacks. The Indictment, taken as a whole, fails to allege that occurred in this matter.

11

## 2. Private Actors

The Defendants also acted as private citizens, which changes the nature and scope of their duty to others. The determination of a private individual's fiduciary duty to provide honest services is part of the "most fundamental indeterminacy" in honest services jurisprudence. *Percoco*, 598 U.S. at 336 (Gorsuch, J, concurring). Although the Supreme Court had the opportunity to address this issue, it merely reversed the court of appeals based on the jury instructions alone, reversing the decision but nothing more. In the Sixth Circuit, §1346 may apply to a private actor who breaches a fiduciary duty to an employer that results in economic harm that the employee foresaw or reasonably should have foreseen. *Frost*, 125 F.3d at 368–69. There is no fiduciary relationship created in mere contractual business dealings. *Id.*

The Indictment alleges the Defendants operated legitimate businesses for which they solicited business, received that business, and were paid the money they earned. (See, eg., Doc 3, PageID 5, 6, 13)  The Indictment does not allege the Defendants violated their duties as private individuals, that Defendants breached their duty to their respective employers, or that the Defendants caused their employer's harm. Accordingly, the Defendants should be seen in their capacities as private actors who were not alleged to have, nor violate, any fiduciary duty or engage in an impermissible bribery/kickback in that capacity.

## B. The Intangible Right to Honest Services

The quagmire of the honest services doctrine can easily trace its origins to the statute's misleading language. The terms "intangible right" and "honest services" are not defined in dictionaries, federal law, state law, nor other canons. The "right" protected in §1346 is intangible, just as any other "right" is. However, §1346 only refers to one —"*the*" intangible right of "honest

services." *Skilling*, 561 U.S. at 402 (explicitly stating that Congress only revived one intangible right: the right to honest services); *Sadler*, 750 F.3d at 591 ("Instead of reinstating the universe of previously protected intangible rights, [Congress, in enacting § 1346] embraced just *one* of them: 'the intangible right of honest services,' which protects its citizens from public-official corruption.").

In *Skilling*, the Supreme Court sought to define what constituted Honest Services Fraud after its decision in *McNally* struck down the "intangible rights theory of mail or wire fraud, which was followed by Congress' subsequent enactment of §1346. In its briefing, the Government urged the *Skilling* Court to adopt two (2) categories constituting the intangible right to honest services: 1) core bribery or kickbacks and 2) undisclosed self-dealing. In arguing that Congress intended to criminalize the conduct in *McNally,* the Solicitor General of the United States urged the Court to adopt a broader standard for determining viable Honest Services claims, one that included undisclosed self-dealing. After all, the Government argued, *McNally* itself involved undisclosed self-dealing.[2] This is noteworthy in that the facts of *McNally* involve a State official who created a phantom "insurance company" that had no office, no telephone, no employees, and engaged in no business activity. The phantom company was created solely to accept bribes/kickbacks from a legitimate insurance company that gained Government insurance business only by agreeing to pay bribes/kickbacks to Kentucky State officials.

For his part, Skilling urged the Supreme Court to narrow the Honest Services Fraud statute to encompass only core bribes and kickbacks. Skilling defined undisclosed self-dealing in his briefing to the Supreme Court, arguing that, "(u)nlike bribes and kickbacks, where money or

---

[2] The Supreme Court disagreed with the Government's characterization of *McNally* as undisclosed self-dealing, instead describing it is a "classic kickback scenario."

property comes directly from a third party who is not deceived, the money or property in self-dealing cases comes directly from an employer who *has* been deceived." [3]

> The Supreme Court ultimately sided with Skilling and held that to adequately allege and prove an Honest Services Fraud violation, the conduct at issue must be "core bribery or kickbacks" as distinguished from undisclosed self-dealing or conflicts of interest. "We now hold that §1346 criminalizes *only* the bribe-and-kickback core of the pre-*McNally* case law." By rejecting the Government's argument that § 1346 should apply to cases involving "undisclosed self-dealing by a public official or private employee," 561 U. S*.,* at 409, the *Skilling* Court made clear that "the intangible right of honest services" must be defined with the clarity typical of criminal statutes and should not be held to reach an ill-defined category of circumstances simply because of a few pre-*McNally* decisions.

*Percoco v. United States*, 598 U.S. 319, 333 (2023) (J. Gorsuch and J. Thomas, concurring).

As recently as *Ciminelli*, the Supreme Court identified another right – the right to control - as an alleged intangible deprivation. The Supreme Court rejected this theory of fraud liability. Its reasoning reiterates that depriving another of the "right to control" does not violate federal law under *Skilling.* While a strict reading of *Ciminelli* indicates the holding related to "traditional property interests," its reasoning in narrowly construing the scope of the federal fraud statutes applies directly to §1346—the right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest, *nor is it a "classic" bribe nor kickback scheme*, thus "the right to control theory cannot form the basis for a conviction under the federal fraud statutes." *Id.*

These interpretations are attempts to anchor a runaway statute to constitutionality by limiting it to proscribe actual federal crimes. "There is a distinct line between allowing such conduct to occur and whether such conduct is in violation of § 1346 honest services language as

---

[3] Notably, the Supreme Court in *Skilling* adopted this definition of "bribes and kickbacks." *Skilling*, 561 U.S. at 404

interpreted by the Supreme Court. . ." *United States v. Abdelaziz*, 68 F.4th 1, 33 (1st Cir. 2023). "Congress's reverberating silence about other intangible interests tells us all we need to know. [The accused's] fabrications, objectionable though they may be and punishable under other laws though they may be, fall outside this statute." *Sadler*, 750 F.3d at 591.

Here, even though the Government labeled the Defendants' breaches of honest services as "bribery and kickbacks," it is apparent that the actual allegations beyond those labels allege conduct outside the narrowly tailored bounds of §1346 and fail to allege a crime of honest services wire fraud.

> i. **The "honest service" owed by someone with a fiduciary duty to "another" to whom the duty is owed is to not engage in bribery or kickbacks as defined by federal law.**

To adequately allege counts of honest service wire fraud, the Indictment must assert facts that the Defendants, in violation of a fiduciary duty, engaged in "classic" or "core" bribery or kickbacks. *Skilling*, 561 U.S. at 409. Stating the words "through bribery or kickbacks" is insufficient; the facts themselves must actually describe core bribery or kickback in violation of a fiduciary duty as defined by the governing precedent.

Both the Supreme Court and Sixth Circuit define "bribery" for purposes of §1346 post-*Skilling*, as it is defined in 18 U.S.C. §201. *Percoco*, 598 U.S. 319, 332 (2023) (quoting the government's brief where it defined honest services bribery under § 201); *McDonnell*, 579 U.S. at 562 (stating that the government agreed that §201 bribery was the standard for bribery under §1346 post-*Skilling*); *United States v. Hills*, 27 F.4th 1155, 1178, 1180, 1185, 1188 (6th Cir. 2022); *Dimora v. United States*, 973 F.3d 496, 500 (6th Cir. 2020) ("The Supreme Court has construed Hobbs Act extortion and honest services fraud to require proof of bribery. . . Thus, courts commonly construe these statutes as requiring an "official act" as defined in the federal bribery

statute, 18 U.S.C. §201—even though neither the Hobbs Act extortion nor honest services fraud statutes use that term.") (internal citations omitted); *United States v. Lee*, 919 F.3d 340, 350 (6th Cir. 2019). This definition is the only constitutionally proper interpretation of "bribery" in the context of *Skilling* and §1346 because other definitions are expansive and targeted at particular classes of misconduct, which is the direct opposite of the mandate by the Supreme Court to interpret the federal fraud statutes by "confin[ing] those statutes to criminalizing the classic crime of 'bribery' in the sense described in *Skilling* and at the core of the pre-*McNally* case law." *Abdelaziz*, 68 F.4th at 31 ("We do not think that while narrowly construing §1346 to cover "the bribe-and-kickback core of the pre-*McNally* case law . . . the Court meant simultaneously to extend §666's broad language to apply outside the particular context for which Congress designed it.").

While the Government's Indictment attempts to allege §201 bribery to support its honest services fraud counts, for the reasons outlined in Casada's and Cothren's respective Memorandums in Support of their Motions to Dismiss, the Government has failed to allege bribery sufficiently to allege an honest services fraud violation.

Although referenced in various contexts in the U.S. Code, "kickback" is not defined in the criminal code. However, it is typically used interchangeably with bribery in the honest services fraud context. See *Skilling*, 130 S.Ct. 2896 (2010). The Supreme Court in *Skilling* did however identify a "classic" kickback scheme – the fact pattern of *McNally*. As noted above, *McNally* involved a "classic" kickback scheme where a State official corruptly agreed with a legitimate insurance company to award workers compensation insurance business in exchange for money paid to the State official. The State official had no affiliation or ownership with the legitimate insurance company, so the State official created a phantom "insurance company" that had no office, no telephone, no employees, and engaged in no business activity. The phantom company

16

was created solely to accept payments from the legitimate insurance company that gained Government insurance business only by agreeing to pay bribes/kickbacks to Kentucky State officials.

The distinctions between the present allegations and the *McNally* facts are clear – in McNally, the State official: i) had no relationship with the company receiving the work/funds from the State, ii) created a phantom company that did no work solely to collect payments from the legitimate company, and iii) received payment for allowing the legitimate company to corruptly receive the State business. The present Indictment alleges that i) Casada had a profit-sharing relationship with Phoenix Solutions, ii) both Phoenix Solutions and Casada's consulting company were legitimate companies performing legitimate services, and iii) Casada earned money from the State based upon his "shared profits" arrangement, or his position within Phoenix Solutions. Put another way, while the Defendant in McNally received money from the legitimate insurance company as payment for the favorable government treatment, the Indictment alleges that Casada shared profits from Phoenix Solutions based upon its work performed for the State. The Indictment has not alleged a kickback scheme, either.

### ii. Undisclosed self-dealing, which is what the Indictment alleges, is not a violation of the intangible right of honest services.

According to *Skilling*, §1346 defines the intangible right to honest services to criminalize only those "who, in violation of a fiduciary duty, participated in bribery or kickback schemes." Because the Supreme Court has gone to great lengths to clarify that "undisclosed self-dealing" is not criminalized under the Honest Services Fraud statute, it is important to also identify what

17

constitutes "undisclosed self-dealing" and compare that conduct to the criminalized bribery/kickbacks as defined by federal law.[4]

Similar to "kickback," "intangible right," and "honest services," "undisclosed self-dealing" is an undefined term in the federal criminal code. However, each branch of Government—Congress, the Judiciary, and the Executive Branch via the Department of Justice, has grappled with defining this term.

Shortly after *Skilling* was decided, Senator Patrick Leahy introduced the Honest Services Restoration Act ("HRSA"),[5] wherein he attempted to codify a new section—18 U.S.C. §1346A—to explicitly expand honest services wire fraud to criminalize undisclosed self-dealing and conflict of interest. A companion bill was introduced in the House by Representative Anthony Weiner the following day. Combined, the HRSA legislation defined "undisclosed self-dealing" as:

> (1) performing an official act to benefit or further a financial interest of such public official, a spouse or minor child, a general business partner, a business or organization in which the public official is serving as an employee, officer, director, trustee, or general partner, or an individual, business, or organization with whom the public official is negotiating for, or has any arrangement concerning, prospective employment or financial compensation; and

> (2) knowingly falsifying, concealing, covering up, or failing to disclose material information regarding a financial interest as required by law.

Honest Services Restoration Act, H.R. 6391, 111th Cong., at 18 U.S.C. § 1346A (4) (2010). Congress did not adopt the proposed bill, and the legislation never became law.

---

[4] The Sixth Circuit has held that "deprivations" of other "intangible rights" are also not criminalized deprivations of honest services: the right to provide the State accurate information, *United States v. Sadler*, 750 F.3d 585, 592 (6th 2014)*,* Lack of information, *United States v. Frost*, 125 F.3d 346, 368 (6th Cir. 1997)*,* and the right to object or the right to control, *United States v. Sadler*, 836 F.2d 248, 254 (6th Cir. 1988).

[5] Honest Services Restoration Act, H.R. 6391, 111th Cong., at 18 U.S.C. § 1346A (4) (2010) (https://legaltimes.typepad.com/files/honest-services-restoration-act.pdf).

In 2011, Representative Jim Sensenbrenner revived the efforts by introducing the "Clean Up Government Act of 2011,"[6] which would explicitly add undisclosed self-dealing to the scope of §1346 and broaden the scope of related provisions, including alleged bribery and kickbacks. The proposed legislation included the following language:

(3) Undisclosed self-dealing.--The term "undisclosed self-dealing" means that—

(A) a public official performs an official act for the purpose, in whole or in material part, of furthering or benefitting a financial interest, of which the public official has knowledge, of—

> (i)    the public official;
> (ii)   the spouse or minor child of a public official;
> (iii)  a general business partner of the public official;
> (iv)   a business or organization in which the public official is serving as an employee, officer, director, trustee, or general partner;
> (v)    an individual, business, or organization with whom the public official is negotiating for, or has any arrangement  concerning, prospective employment or financial compensation; or
> (vi)   an individual, business, or organization from whom the public official has  received any thing or things of value, otherwise than as provided by law for the  proper discharge of official duty, or by rule or regulation; and

(B) the public official knowingly falsifies, conceals, or covers up material information that is required to be disclosed by any Federal, State, or local statute, rule, regulation, or charter applicable to the public official, or the knowing failure of the public official to disclose material information in a manner that is required by any Federal, State, or local statute, rule, regulation, or charter applicable to the public official.

However, this bill also never became law. As such, it is apparent that neither the Supreme Court nor Congress itself intended for undisclosed self-dealing to qualify as Honest Services Fraud.

Multiple courts have also attempted to define this term of art. These holdings are best summarized by the Second Circuit, which stated, "[i]n the self-dealing cases, the defendant typically causes his or her employer to do business with a corporation or other enterprise in which

---

[6]    Clean    Up    Government    Act    of    2011,    H.R.    112-688,    112th    Cong.    (2011) (https://www.govinfo.gov/content/pkg/CRPT-112hrpt688/html/CRPT-112hrpt688.htm).

the defendant has a secret interest, undisclosed to the employer." *United States v. Rybicki*, 354 F.3d 124, 140 (2d Cir. 2003).

Finally, the Department of Justice, in arguments before the Supreme Court, has attempted to articulate or define the definition of "undisclosed self-dealing." In its Supreme Court briefing, the solicitor general described undisclosed self-dealing as:

> "Second, deprivation of honest services encompasses undisclosed self-dealing by a public official or private employee - *i.e.*, the taking of official action by the employee that furthers his own undisclosed financial interests while purporting to act in the interests of those to whom he owes a fiduciary duty. Although not as numerous as the bribery and kickback cases, the pre-*McNally* cases involving undisclosed self-dealing were abundant. Indeed, the theory of liability in *McNally* itself was nondisclosure of a conflicting financial interest."

Brief of United States, *Skilling v. United States of America*, No. 08-1394 (2010), pp. 43-44.

Notably, in its footnote 5 of its brief, the Government identifies 13 cases where undisclosed self-dealing was federally prosecuted. *Id.* The thread throughout those cases cited reveals the common fact pattern as identified by the Government – the taking of an official action that causes an act or transaction that benefits the actor, while misrepresenting his/her financial interest or benefit in the act or transaction. Of particular note, the Government cites as an example of undisclosed self-dealing *United States v. Dick*, at 744 F.2d 546, 550 (7th Cir. 1984). In *Dick*, an attorney for a surety company and a contractor secured the awarding of construction bids to a contractor while concealing or falsifying the lack of other bidders and who was actually performing the work. This fact pattern, identified by the Government as self-dealing, is analogous to the present Indictment. Because the DOJ itself has defined the *Dick* fact pattern as undisclosed self-dealing, and because undisclosed self-dealing is unequivocally not a federal crime, the DOJ itself has in effect previously argued that the present conduct does not violate §1346.

In reviewing the various definitions of undisclosed self-dealing outlined by Circuit courts, urged by the Solicitor General, proposed by legislators, and/or implicitly adopted by the Supreme Court, the common thread throughout is that the alleged victim paid some form of renumeration, either via misrepresentation of or failure to disclose an interest, without being aware of the interest, and that the recipient of the renumeration benefitted via his undisclosed interest. This is exactly what the Indictment alleges. The Government has accused Glen Casada, in concert with Cade Cothren, with concealing Casada's (and Cothren's) interests in Phoenix Solutions. By hiding these interests, the State was unaware that when it contracted with Phoenix Solutions, Casada and Cothren had a financial interest in Phoenix Solutions. The Government finally alleges that Casada then received money *earned* by Phoenix Solutions, as a result of his financial interest in Phoenix Solutions. *See* Indictment paragraph 43.

### III. Conclusion

Casada submits the above supplemental brief in compliance with the Court 's Order. For the reasons articulated in his Motion to Dismiss and Supporting Memorandum, and for the reasons outlined above, the Indictment should be DISMISSED.

Respectfully submitted,

 */s/ Jonathan P. Farmer*
Edward M. Yarbrough (BPR #004097)
Jonathan P. Farmer (BPR #020749)
S. Chase Fann (BPR #036794)
511 Union St, Suite 1000
Nashville, TN 37219
(P) 615-238-6300
eyarbrough@spencerfane.com
jfarmer@spencerfane.com
 cfann@spencerfane.com

Counsel for Glen Casada

21

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a Notice of Electronic Filing to the following. I will serve a copy of this sealed pleading on same.

Amanda Klopf
John Taddei
Assistant US Attorneys
US Attorney Office - Middle District
719 Church St. Suite 3300
Nashville, TN 37203
Amanda.klopf@usdoj.gov
John.Taddei@usdoj.gov

Counsel for United States of America

/s/ Jonathan P. Farmer