# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Case No. 3:22-CR-00282 |
| GLEN CASADA and ) | District Judge Eli J. Richardson |
| CADE COTHREN ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' JOINT MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCLOSURE OF IDENTITIES OF GOVERNMENT'S CONFIDENTIAL SOURCES

The government's underlying investigation was spawned and heavily aided by at least three confidential human sources (hereinafter, "CHSes"). One or more of the CHSes surreptitiously recorded conversations of and/or about Defendants and their alleged co-conspirator, Robin Smith, disclosed information about meetings within the Tennessee House of Representatives, turned over internal communications related to Members' Postage and Printing accounts, and provided "insider" information about the new Postage and Printing Account guidelines issued by the office of the Speaker of the Tennessee House of Representatives in or around June 2020. Despite these informants' central role in the underlying investigation, the government has refused to disclose their identities because it does not "intend" to call any of these individuals to testify at trial. The government cannot shield these witnesses' identities by opting not to call them as witnesses, however.

Even if the CHSes are omitted from the government's witness list, Defendants' knowledge of their identities would materially aid their defenses and allow them to effectively prepare for trial. Defendant Cothren has already subpoenaed multiple Members and employees of the Tennessee General Assembly to testify at trial. The likelihood that the CHSes are on the defense's witness list(s) is high, and Defendants must know who these individuals are so they can determine what, if any, exculpatory, impeachable, inconsistent, or other statements apply to each witness <u>before</u> they testify

in Defendants' case-in-chief. The government's obligation to disclose of exculpatory and impeachment evidence is meaningless unless the defendant can determine the source of that evidence. *See Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963). The significance of the informants' testimony and the relevance their identities have in establishing Defendants' defenses (including their potential biases), outweighs the "limited privilege" the government has to withhold their identities. *See United States v. Henderson,* No. 23-1786, 2024 U.S. App LEXIS 18572, at *17-18 (6th Cir. July 26, 2024) (citing *Rovario v. United States,* 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957)).

For the reasons set forth herein, the Court should order the government to disclose the identities of the Confidential Human Sources (identified in discovery documents as CHSes 1, 2, and 3 and those who participated in the recordings of and/or about Defendants and Ms. Smith) referenced in the government's document productions.

## I.     Relevant Background

Hundreds of documents produced by the government confirm that multiple CHSes played a pivotal role in the investigation in this matter, providing key information that the government relied upon in search warrant affidavits and the Indictment. CHSes recorded multiple statements of and/or about Defendants and their alleged co-conspirator, Ms. Smith, including five audio recordings and four audio/visual recordings, which were provided in discovery. The government specifically identified three CHSes by number in its production; however, the total number of CHSes who actively participated in the investigation is unknown. And the government has refused to identify any of these informants.

The government's chief allegation that Defendants "would and did conceal [Mr. Cothren's] involvement in Phoenix Solutions… due to the expectation that Phoenix Solutions would not be approved by the Tennessee House Speaker's Office," stems from one informant's (CHS1) subjective

opinion and professed knowledge of an alleged vendor "approval process." *See* Doc. No. 3: Indictment at ¶ 24; Sealed Exhibit A: 2021 Search Warrant Affidavit for Cade Cothren's Home and Person at ¶¶ 6, 22. Likewise, the charged conspiracy is predicated on emails provided by CHS2 and a recording taken by CHS3 and other unnamed and unnumbered CHSes. *See* Doc. No. 3 at ¶¶ 23, 24, 49; Sealed Exhibit A at ¶ 34, 124. Many of the CHSes' statements to law enforcement are misleading; others are demonstrably false. These informants' activities are not peripheral to the charged offenses. Rather, they form the factual foundation for the charged offenses that Defendants will challenge at trial.

Despite the government's substantial reliance on these CHSes and their recordings, it has repeatedly refused to disclose their identities. Undersigned counsel requested disclosure of the CHSes' identities, particularly the numbered CHSes, on February 4 and 10, 2025. The government responded to each request by maintaining this information was privileged and the government was not obligated to identify the informants or disclose which statements were attributable to which source because it did not "intend" to call any the CHSes to testify at trial.

Given the CHSes' integral role in the case and the implications for Defendants' constitutional rights, the disclosure of their identities would be immensely helpful to the defense and is essential to a fair determination of this case. Thus, the government should be compelled to disclose the identities of CHSes 1, 2, and 3 and the CHSes who participated in the recordings of and/or about Defendants and Ms. Smith.

## II.     Legal Standard

The government's general privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law" is not absolute. *Roviaro v. United States*, 353 U.S. 59 (1957). In *Roviaro*, the Supreme Court reversed the defendant's convictions, finding the "trial court committed prejudicial error in permitting the government to withhold the identity of its undercover employee in the face of repeated demands by

3

the accused for his disclosure." *Id.* at 65. When determining whether disclosure of a confidential informant is warranted, trial courts:

> …must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62 (internal quotation marks omitted). Whether nondisclosure is erroneous "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

When "disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause, the privilege must give way." *United States v. Henderson,* No. 23-1786, 2024 U.S. App. LEXIS 18572 at *17-18 (6th Cir. July 26, 2024) (citing *Rovario,* 353 U.S. at 60-62)).

The defendant "must provide some evidence that disclosure of the informant's identity would assist in his defense before disclosure will be warranted." *Id.* at *19 (citations omitted). "Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." *Id.*

### III.  Argument

#### A.  The Identities of the CHSes Are Significant to Cothren and Casada's Defenses.

In discovery, the government identified three CHSes by number: CHS1, CHS2, and CHS3. However, there are multiple other unnamed and unnumbered CHSes mentioned in discovery, including CHSes who participated in the recordings of and/or about Defendants and Ms. Smith provided in discovery. Defendants will address the significance of each numbered CHS in turn, below.

#### 1.  "CHS1"

Based on information available to the defense, the underlying investigation began when CHS1 informed the FBI of an alleged "scheme" involving Ms. Smith and Phoenix Solutions in or around May 2020. *See* Sealed Exhibit A at ¶ 20. CHS1 is identified in multiple search warrant affidavits as an

individual who is "employed by the Legislature" and who "has firsthand knowledge of the approval process" for the Postage and Printing Account funds at issue in this case. *Id.* at ¶ 22.

The government's allegation that the office of the Speaker for the Tennessee House of Representatives "had the authority to approve or deny a vendor to provide services or any mailing funded by [a Member's Postage and Printing account]" is apparently based on a single source: CHS1. (Doc. No. 3 at ¶ 12; *see* Sealed Exhibit A at ¶¶ 6, 22). As Defendants highlighted in numerous filings, the role of the Speaker's office in processing Members' requests to use their Postage and Printing accounts for constituent mailers is hotly disputed. *See, e.g.,* Doc. No. 66: Defendant Cade Cothren's Memorandum in Support of Motion to Dismiss Indictment at p. 5. Hence, the "approval process" for constituent mailers is a key issue in this case.

CHS1's personal opinion that neither Phoenix Solutions nor Mr. Cothren would have been "approved" as a vendor if Mr. Cothren's ownership of Phoenix Solutions had been disclosed to the Speaker's office is another fact that originated from CHS1 alone. *See* Sealed Exhibit A at ¶¶ 6, 22. That contention bears directly on the issue of materiality, a required element of the charged offense of Honest Services/Wire Fraud.

CHS1's personal "knowledge" of facts underpinning the alleged conspiracy also formed the basis for multiple search warrants and numerous factual allegations in the Indictment. *See* Doc. No. 3 at ¶ 24; *see also* Sealed Exhibit A at ¶¶ 6, 21-22. For example, CHS1 disclosed alleged co-conspirator Robin Smith's statements about Phoenix Solutions at a meeting with the Tennessee House Republican Caucus Campaign Committee to the government. *See* Sealed Exhibit A at ¶ 32. The government's conspiracy allegations rely heavily on the statements attributed to Ms. Smith by CHS1 during this caucus meeting. *See* Doc. No. 3 at ¶¶ 23, 24, 49. But CHS1 did not reveal who else was supposedly present during this caucus meeting, and Defendants have no way of obtaining that information or

confirming Ms. Smith did, in fact, make the alleged statements without questioning CHS1 or another informant, like CHS2 (see below).

In addition to revealing key communications with or involving Ms. Smith, CHS1 was also the source of other evidence central to the government's case, including: internal communications between the Speaker's Office and the Office of Legislative Administration about invoices submitted for payment from Members' Postage and Printing accounts; Phoenix Solutions' direct deposit form; information about "expanded guidelines [implemented] for the use of [Members'] postage and printing account[s]" in June 2020; and a series of emails between Ms. Smith, Matthew Phoenix, and Candice McKay on which CHS1 was copied.[1] *See* Sealed Exhibit A at ¶¶ 35, 36, 38, 106, 111.

Despite the apparent wealth of personal knowledge held by CHS1 and their material role in the government's investigation, the government maintains it does *not* intend to call this witness at trial. Regardless, the government should be compelled to disclose this informant's identity so Defendants can properly analyze the nature and extent of this person's "knowledge," their potential biases and motivation for cooperating with the government, and the need for their testimony, if any, during the defense's case-in-chief at trial. This is particularly true in the present matter, where it is apparent through the discovery, counsel's investigation, and public reporting that the investigation may have originated and/or been fueled, at least in part, from a separate political investigation.

---

[1] The government may argue that explicit references to CHS1 in certain emails essentially confirms their identity; however, the government's references to this informant in various discovery documents suggest possible errors and plausibly point to more than one individual, thereby enhancing the need for disclosure and clarification. For example, CHS1 is described in multiple search warrant affidavits as an individual employed by the Legislature and in other documents as someone who was copied on emails with Ms. Smith, Matthew Phoenix, and Candice McKay. The only other individual on these emails was Connie Ridley. However, other search warrant affidavits reference conversations between Ms. Ridley and CHS1. And it is highly unlikely that Ms. Ridley, a former employee of the Office of Legislative Administration, would be wearing a wire and recording conversations at a Tennessee House Republican Caucus Campaign Committee, as CHS1 also allegedly did. The more plausible explanation is that CHS1 is the Speaker of the House, Cameron Sexton, or someone working in the Speaker's office.

2. **"CHS2"**

CHS2 was also a central figure in the underlying investigation and apparently has firsthand knowledge of Ms. Smith's comments about Phoenix Solutions during the Tennessee House Republican Caucus Campaign Committee meeting referenced in Section 1 (CHS1) above. The government cites Representative Smith's foregoing statements as support for the charged conspiracy. *See* Doc. No. 3 at ¶¶ 23, 24, 49. In addition, multiple search warrant affidavits claim CHS2 "questioned Smith about Phoenix Solutions, its ownership, and prior work history" during the caucus meeting and exchanged text messages with Ms. Smith and an individual she "identified" as "Matthew Cyrus." Sealed Exhibit A at ¶ 34. CHS2 is the only person, other than Ms. Smith, with knowledge of these communications. There is an obvious need for Defendants to know the identity of the informant who claims s/he personally spoke with the government's main cooperator, Ms. Smith, about Phoenix Solutions, and Defendants must be able to fully examine and test the veracity of each witness's (Ms. Smith and CHS2) recollections of these conversations.

3. **"CHS3"**

CHS3, too, occupies a unique space and has knowledge relevant to the defense. CHS3 surreptitiously recorded a call with Ms. Smith, during which s/he inquired about utilizing Postage and Printing account funds for constituent mailers. *See* Sealed Exhibit A at ¶ 124. The date of this call is unknown, but the call appeared to stem from Ms. Smith's remarks about Phoenix Solutions during the aforementioned caucus meeting, which (again) are central to the government's conspiracy allegations. *See* Doc. No. 3 at ¶¶ 23, 24, 49. In the Indictment, the government references "a member of the Political Party 1 Tennessee House Caucus" and attributes information to that member that is very similar to the information attributed to "CHS3" in the government's document production. *See* Doc. No. 3 at ¶ 46. CHS3 is the only person, other than Representative Smith, with knowledge of these communications. Again, there is an obvious need for Defendants to know the identity of the

7

Case 3:22-cr-00282    Document 258    Filed 02/25/25    Page 7 of 13 PageID #: 1646

informant who personally spoke to the government's main cooperator about key facts that form the basis of the conspiracy and related charges in this case.

### 4. *Unnumbered CHSes*

To date, the government has produced hundreds of "FD-1023s," which are FBI forms through which agents document information and recordings received from CHSes. The 1023 forms produced in this case reference myriad documents and communications with unnamed and unnumbered CHSes, including multiple recordings. The recordings produced by the government are either specifically identified as "CHS recordings" or recordings produced with no context or other information that would allow Defendants to ascertain the identities of the participants. These recordings include the following files:

- CHS_Recordings_at_TN_House_Republican_Caucus_Annual_Retreat.001.cam1.wmv
- CHS_Recordings_at_TN_House_Republican_Caucus_Annual_Retreat.002.cam1.wmv
- CHS_Recordings_at_TN_House_Republican_Caucus_Annual_Retreat.003.cam1.wmv
- CHS_Recordings_at_TN_House_Republican_Caucus_Annual_Retreat.004.cam1.wmv
- 5753238272/5753238272 2021-01-15 20-28-56 68748-001.wav
- 5753238272/5753238272 2021-01-15 20-45-51 68749-001.wav
- 9014123532/9014123532 2020-08-20 16-06-00 59653-001.wav
- Matthew Phoenix 9-28-20
- Matthew Phoenix 10-16-20

Many of these recordings include statements used to support the government's allegations of a conspiracy. *See* Doc. No. 3 at ¶¶ 23, 24, 46, 49; *see also* Sealed Exhibit A at ¶¶ 124, 138. Defendants cannot effectively inquire about or challenge the creation or authenticity of such recordings unless the government discloses the identities of the participants, which will also allow Defendants determine if they are CHS 1, 2, or 3. Defendants will very likely call one or more of these unidentified CHSes to testify at trial even if they are not called by the government, so disclosure of their identities is necessary

8

for Defendants to determine whether their testimony will aid the defense and, if so, allow effective (direct or cross) examination of their statements underpinning the government's conspiracy allegations, as well as any other matter bearing on the witness' credibility.

### B. Disclosure Should be Compelled Even if the Government Does Not Intend to Call the CHSes at Trial.

In response to the defense's request for the government to identify its confidential informants, the government stated it had no obligation to do so because it does not intend to call CHS 1, 2, 3 or any other informant to testify at trial. No matter. *Rovario* and the interests of justice still weigh in favor of compelling the pre-trial disclosure of the informants' identities.

As the Supreme Court noted in *Rovario*, "no fixed rule with respect to disclosure [of an informant's identity] is justifiable" because this determination is fact-dependent and requires trial courts to balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." 353 U.S. at 62. As discussed at length *supra*, the charged offenses, the possible defenses, the possible significance of each CHS's testimony, and other relevant factors in this case weigh heavily in favor of discarding the "general rule" of non-disclosure. *Rovario*, 353 U.S. at 62 (need for disclosure depends "on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.").

First, the government has already agreed to produce "all remaining Jencks material to defendants" by March 4, 2025. *See* Doc. No. 225: Notice of Filing Joint Proposed Scheduling Order. For this disclosure to be effective, Defendants must be able to ascertain the individuals to whom these materials are attributable. The same rationale applies to any *Brady* or *Giglio* materials the government is required to produce. Such productions are effectively meaningless if the information cannot be traced to their individual sources.

9

Second, the facts in this case are easily distinguishable from the types of cases – usually involving drug offenses – wherein the government's non-disclosure of an informant's identity is routinely upheld. *See, e.g., United States v. Henderson*, 2024 WL 3549582, No. 23-1786 (6th Cir. July 26, 2024); *United States v. Perkins*, 994 F.2d 1184 (6th Cir. 1993). In *Henderson*, the Sixth Circuit found no error in the government's non-disclosure of an informant's identity or recordings of the informant's controlled buys from a defendant because the defendant "was not charged with any crime arising from the controlled buys," and the government only used the information provided by the informant to search premises occupied by the defendant. *Henderson*, 2024 WL 3549582, at *7. The facts in this case are markedly different. This is an extraordinarily complex case, involving dozens of elected officials and employees, some of whose statements, beliefs, and opinions lie at the epicenter of the charges against Defendants. A witness's prior statements and his/her political, financial, personal, and other motives are fair subjects of cross – or direct – examination for any of the confidential informants, no matter which party calls him/her to the witness stand.

But Defendants will be denied their constitutional right to effective cross examination and direct examination of witnesses they call unless they can attribute a CHS's statements to the correct witness. Here, the government's minimal interest in protecting the flow of information from witnesses in, or associated with, the Tennessee General Assembly must yield to Defendants' need to access relevant and helpful information that is essential to a fair trial. Here, the government's justification for protecting its sources difficult to imagine – there is no reason to believe these sources would be placed in danger by disclosure, nor any reason to believe that they are participating in additional undercover activities. Regardless, the prosecution's nominal interest is clearly outweighed by Defendants' need to prepare for trial and to evaluate whether these witnesses' testimony fit into their case.

**IV. Conclusion**

For all the above reasons, Defendants respectfully requests this Court enter an order compelling the government to disclose the identities of the CHSes who have been identified by number and who participated in the surreptitious recordings of and/or about Defendants and Ms. Smith provided in discovery.

Respectfully Submitted,

**Sherwood Boutique Litigation, PLC**

/s/ Cynthia A. Sherwood
Cynthia A. Sherwood, #20911
Austin M. Correll, #39561
414 Union Street
Suite 1110
Nashville, TN 37219
T: 615-873-5670
F: 615-900-2312
cynthia@sherwoodlitigation.com
austin@sherwoodlitigation.com
*Counsel for Defendant Cade Cothren*

**Barnes & Thornburg LLP**

/s/ Joy Boyd Longnecker
Joy Boyd Longnecker, #29627
1600 West End Avenue
Suite 800
Nashville, TN 37203
T: 615-621-6012
joy.longnecker@btlaw.com
*Counsel for Defendant Cade Cothren*

**Spencer Fane LLP**

/s/ Jonathan P. Farmer
Edward M. Yarbrough
Jonathan P. Farmer
Steven C. Fann
Spencer Fane LLP
511 Union Street
Suite 1000
Nashville, TN 37219
eyarbrough@spencerfane.com
jfarmer@spencerfane.com
cfann@spencerfane.com
*Counsel for Defendant Glen Casada*

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing motion was electronically filed with the Clerk on February 25, 2025, and service was made upon the following via CM/ECF and/or by email.

Edward M. Yarbrough
Jonathan P. Farmer
Steven C. Fann
Spencer Fane LLP
511 Union Street
Suite 1000
Nashville, TN 37219
eyarbrough@spencerfane.com
jfarmer@spencerfane.com
cfann@spencerfane.com

John P. Taddei
Blake J. Ellison
U.S. Department of Justice
Public Integrity Section
1301 New York Ave. NW
Ste 10th Floor
Washington, DC 20530
john.taddei@usdoj.gov
blake.ellison@usdoj.gov

Taylor J. Phillips
U.S. Attorney's Office
719 Church Street
Suite 3300
Nashville, TN 37203
taylor.phillips@usdoj.gov

W. David Bridgers
L. Wells Trompeter
Holland & Knight LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
david.bridgers@hklaw.com
wells.trompeter@hklaw.com

Ben M. Rose
RoseFirm, PLLC
Post Office Box 1108
Brentwood, Tennessee 37024
ben@rosefirm.com

/s/ Cynthia A. Sherwood