UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Case No. 3:22-CR-00282 |
| GLEN CASADA and CADE COTHREN | ) ) ) | District Judge Eli J. Richardson Magistrate Judge Alistair Newbern |
| Defendants. | ) ) ) | |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO COMPEL
DISCLOSURE OF IDENTITIES OF GOVERNMENT'S CONFIDENTIAL SOURCES**

  The government has (for now, at least) omitted its confidential human sources ("CHSes") from its witness list and invoked its limited privilege to avoid disclosing the identities of the CHSes in this case. The identities of the CHSes are relevant and helpful to the defense and essential to a fair determination of this case. When Defendants' vital interests are weighed against the public's limited interest in shielding this information, the scales tip in favor of overriding the privilege and compelling disclosure.

**A. The Government Misapprehends the Applicable Standard for CHS Disclosures.**

  At the center of this public corruption case is a political maelstrom. The identity of the government's informants—most, if not all, of whom are apparently state officials/employees—who provided information and steered the underlying investigation is of <u>vital</u> importance to Defendants' case. In its Response, the government claims the defense has no right or interest in discovering a CHS's identity or communications for purposes of impeachment–unless the informant testifies for the government. (Doc. No. 263: United States' Opposition to Defendants' Joint Motion to Compel Disclosure of Identities of Government's Confidential Sources at p. 4). In response to Defendants' argument that <u>they</u> may call an informant to testify, the government claims it has no obligation to

1

provide *Giglio* or *Jencks* evidence for defense witnesses. (*Id.*) But the government's argument misses the mark and ignores the applicable standard for compelling an informant's identity. That standard applies regardless of the government's independent obligation to produce material and exculpatory evidence to the defense.[1] The standard is whether, given the particular circumstances of this case and the crime charged, the "disclosure of an informant's identity…is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause." *United States v. Henderson,* No. 23-1786, 2024 U.S. App. LEXIS 18572 at *17-18 (6th Cir. July 26, 2024) (citing *Roviaro,* 353 U.S. at 60-62).

**B.     The Disclosure of the Identities of the CHSes Is Sufficiently Relevant and Helpful to the Defense and Is Essential to a Fair Trial.**

The government attempts to avoid scrutiny of its key informants by tucking them away and claiming it can make its case without them. <u>But this case would not exist without those informants</u>. This is not a situation in which informants tipped government agents off to the existence of criminal activity, and the agents amassed independent evidence of such activity. Here, the informants voluntarily secured hours of secret recordings and provided in-depth documents and details of internal communications and political caucus meetings, all of which form the foundation of the government's case. The government did not merely use these CHSes "to support a search warrant application." (Doc. No. 263 at p. 7). Despite the fact that the government's theory of the case rests on one person's—the Speaker of the House—supposed power and disinclination to "approve" Phoenix Solutions as a vendor, the government insists it "plans to prove the materiality element without CHS1's testimony 'so the reliability of the [CHS's] statements' will be 'irrelevant.'" (Doc. No. 263 at

---

[1] Defendants argued in their Memorandum that "the government's obligation to disclose exculpatory and impeachment evidence is meaningless unless the defendant can determine the source of that evidence." (Doc. No. 258 at p. 2). The disclosure of the identities of the CHSes is significant to the defense under *Roviaro* for that and the other reasons outlined in Defendants' Memorandum and herein, but the government is the sole arbiter of whether *Brady* and *Giglio* mandate such disclosure at this juncture.

2

p. 7) (citing *United States v. Sierra-Villegas,* 774 F.3d 1093 (6th Cir. 2014)). The *Sierra-Villegas* facts are inapposite to those present here. There, the confidential informant ("CI") gave a tip to officers about methamphetamine deals. *Id.* at 1096. The undercover officer used the CI to coordinate separate meth deals and phone calls with the defendant, and the government obtained sufficient evidence of criminal activity through that coordination. *Id.* At trial, the government did not call the CI to the stand but played a recorded phone call he had with the defendant. *Id.* at 1098. The defendant was able to identify the CI through that phone call, but the Court denied his request to compel the disclosure of that CI's identity on the record because the CI's testimony was not essential to his defense. *Id.*

Citing *Sierra-Villegas*, the government contends the source and reliability of its informants are immaterial in light of the other evidence it gathered in this case. (Doc. No. 263 at p. 7). But, unlike the independent evidence that law enforcement amassed by coordinating with the informant in *Sierra-Villegas*, the evidence given to investigators by the CHSes in this case is <u>the exact same evidence</u> the government is using to prosecute Defendants.

Indeed, the government cites the cornerstone piece of evidence in its case—given to them by CHS1—in its Response. (Doc. No. 263 at p. 7). The prosecution's theory of the case is that CHS1 told the government there was a vendor approval process and that Phoenix Solutions would not have been an approved vendor. *Id.* This is not just some tip that led to the discovery of an independently provable crime. If this assertion is not true—and Defendants will prove it is not—then Defendants are innocent. This assertion by CHS1 is the crux of every charge in this case; thus, Defendants must be able to identify, challenge, and fully cross-examine this informant to defend against these charges.

Most of the cases the government relies on contain a fact pattern that is distinctly different than the facts at bar—they are cases wherein the CI's allegations were not the basis of the charge(s) in the indictment. *See United States v. Ray*, 803 F.3d 244, 273 (6th Cir. 2015) (a drug case in which the trial court found a CI could not have testified to any relevant fact because defendant was not charged

3

for the offense the CI provided information about); *United States v. Shanklin*, 924 F.3d 905, 913 (6th Cir. 2019) ("[B]ecause the CI's statements did not relate to any evidence supporting the charged crime (possession of a firearm), the CI's credibility was not a sufficient reason to order disclosure."); *United States v. Doxey*, 833 F.3d 692, 708 (6th Cir. 2016) (citing *United States v. Sharp,* 778 F.2d 1182, 1186 n.2 (6th Cir. 1985) (finding the CI was "'merely a tipster and not an active participant in the events underlying [Doxey's] potential liability.'").

The government minimizes the importance of its informants' testimony because it claims it has no use for them at trial. Defendants do, however. The "significance" of CHS bias, credibility and impeachment evidence is <u>inherent</u> in a case like this where Defendants' primary defense is that their conduct was not illegal or out of the ordinary and that their former colleagues and political rivals in the General Assembly had self-serving reasons for "assisting" federal agents and persuading them that Defendants violated a contrived "vendor approval process." The credibility of the informants that provided information about what this supposed process supposedly entailed—in the absence of any <u>written</u> policy—is extremely relevant because Defendants are directly defending against allegations made by the CHSes. *United States v. Cooper,* 2009 U.S. Dist. LEXIS 11973 at *7 (E.D. Mich. Feb. 18, 2009) (denying disclosure because defendant did not have to defend against any allegations made by CI).

Finally, Defendants' proffered reasons for disclosure are detailed and specific, not "mere conjecture" or "hopes" for potentially helpful information. Defendant Cothren has likely already subpoenaed one or more of the CHSes as witnesses. What Defendants need is confirmation of the identities of the CHSes from the government so they can attribute the false, misleading, and/or unreliable statements or other information provided by the informants to the proper trial witness and test the reliability and veracity of that information and these informants, as is their Constitutional right.

Defendants devoted five pages of their opening brief to recounting the myriad ways in which the identities of each numbered CHS and the individuals on all CHS recordings are relevant and helpful evidence for the defense. (*See* Doc. No. 258, at pp. 4-9, adopted and incorporated herein). Defendants have already highlighted the importance of disclosing CHS1 above and will address the need for disclosure of the remaining CHSes briefly here. CHS2 communicated with the government's main cooperating witness, Robin Smith, during Republican Caucus meetings and supposedly questioned her at length about Phoenix Solutions, including in text messages. CHS2 is the only person who can confirm the authenticity of these communications. CHS3 is the only other person who was present during a recorded call with Ms. Smith that forms the basis for the government's conspiracy allegations. (*See* Doc. No. 3, at ¶¶ 23, 24, 49). The government's offer to stipulate to the authenticity of the communications and recordings does not moot Defendants' disclosure request or make a CHS's identity any less relevant or helpful, nor does it minimize the relevance of, or need for, these communications and recordings, particularly if Defendants are seeking to challenge—rather than accept—their authenticity.

The unnamed CHSes who obtained the various recordings produced in discovery should also be identified because these recordings, too, underpin the government's conspiracy allegations. (*See* Doc. No. 3 at ¶¶ 23, 24, 46, 49). If Defendants call <u>any</u> of the confidential informants at trial, they need to know to whom these recorded statements are attributable to challenge the government's conspiracy and substantive charges and for impeachment purposes, as well.

C.  **The Government's Professed Need to Protect CHSes Does Not Outweigh Defendants' Right To Defend Themselves.**

The list of potential cooperators is short, and Defendants are merely asking for official confirmation of their identities and any associated recordings. The current Speaker of the House, Cameron Sexton, has already said, "We have been fully cooperating with the federal authorities since

I became speaker in 2019."[2] And documents produced by the government confirm that Mr. Sexton, or someone from his office, was cooperating with the government before Phoenix Solutions was even created. The other CHSs are likely former or current state employees who may have already been publicly associated with this case one way or another. Thus, the government's professed need to protect the safety and identity of its informants is de minimis or non-existent.

The government argues that its "reliable" CHSes might still be used for further investigations, so their identities must remain a mystery. But disclosure of a CHS's identity for purposes of this case does not require the government to disclose whether the informant is also involved in other investigations. And, while anonymity may be important for a CHS's safety in some circumstances, those circumstances are not present here. That anonymity is generally protected for drug informants or gang members whose very lives would be in jeopardy if their identities were exposed. *United States v. Lloyd*, 400 F.2d 414, 415 (6th Cir. 1968) (explaining that anonymity is particularly important when investigating drug transactions).

**D.     Conclusion**

For all the foregoing reasons, Defendants respectfully request that their Joint Motion to Compel Disclosure of Identities of Government's Confidential Sources be granted.

---

[2] Phil Williams, *REVEALED: Tennessee House Speaker, other lawmakers subpoenaed by the federal grand jury*, News Channel 5 (Mar. 22, 2022), https://www.newschannel5.com/news/newschannel-5-investigates/tennessee-house-speaker-other-lawmakers-subpoenaed-by-federal-grand-jury.

Respectfully Submitted,

**Sherwood Boutique Litigation, PLC**

/s/ Cynthia A. Sherwood
Cynthia A. Sherwood, #20911
Austin M. Correll, #39561
414 Union Street
Suite 1110
Nashville, TN 37219
T: 615-873-5670
F: 615-900-2312
cynthia@sherwoodlitigation.com
austin@sherwoodlitigation.com
*Counsel for Defendant Cade Cothren*

**Barnes & Thornburg LLP**

/s/ Joy Boyd Longnecker
Joy Boyd Longnecker, #29627
1600 West End Avenue
Suite 800
Nashville, TN 37203
T: 615-621-6012
joy.longnecker@btlaw.com
*Counsel for Defendant Cade Cothren*

**Spencer Fane LLP**

/s/ Jonathan P. Farmer
Edward M. Yarbrough
Jonathan P. Farmer
Steven C. Fann
Spencer Fane LLP
511 Union Street
Suite 1000
Nashville, TN 37219
eyarbrough@spencerfane.com
jfarmer@spencerfane.com
cfann@spencerfane.com
*Counsel for Defendant Glen Casada*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing motion was electronically filed with the Clerk on March 11, 2025, and service was made upon the following via CM/ECF and/or by email.

Edward M. Yarbrough
Jonathan P. Farmer
Steven C. Fann
Spencer Fane LLP
511 Union Street
Suite 1000
Nashville, TN 37219
eyarbrough@spencerfane.com
jfarmer@spencerfane.com
cfann@spencerfane.com

John P. Taddei
Blake J. Ellison
U.S. Department of Justice
Public Integrity Section
1301 New York Ave. NW
Ste 10th Floor
Washington, DC 20530
john.taddei@usdoj.gov
blake.ellison@usdoj.gov

Taylor J. Phillips
U.S. Attorney's Office
719 Church Street
Suite 3300
Nashville, TN 37203
taylor.phillips@usdoj.gov

W. David Bridgers
L. Wells Trompeter
Holland & Knight LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
david.bridgers@hklaw.com
wells.trompeter@hklaw.com

Ben M. Rose
RoseFirm, PLLC
Post Office Box 1108
Brentwood, Tennessee 37024
ben@rosefirm.com

/s/ Cynthia A. Sherwood