

April 26, 2023

**VIA FAX**

Honorable Henry C. Leventis
United States Attorney
Middle District of Tennessee
719 Church St., Suite 3300
Nashville, Tennessee 37203
Fax: (615) 401-6626

Honorable Glenn R. Funk
District Attorney General of the 20th Judicial District
Washington Square, Suite 500
222 2nd Avenue
North Nashville, TN 37201
Fax: (615) 862-5599

Dear Messrs. Leventis and Funk:

Press reports indicate that Speaker of the Tennessee House of Representatives Cameron Sexton submitted numerous forms to the Office of Legislative Administration seeking and receiving reimbursements for per diem expenses that may well be above the amount to which he is entitled. Campaign for Accountability ("CfA"), a nonprofit organization focused on accountability in public life, respectfully requests your offices immediately investigate whether Mr. Sexton has violated any state or federal criminal laws, including felony theft, honest services fraud, and tax fraud.

## Background

Although Speaker Sexton represents District 25, encompassing the community of Crossville, Tennessee, approximately a two-hour drive from the state capitol of Nashville, in September 2021, Speaker Sexton purchased a home in Nashville.[1] While Speaker Sexton still owns property

---

[1] Judd Legum, Update: Tennessee House Speaker Secretly Bought $600,000 Home in Nashville, *Popular Information*, April 13, 2023, available at https://popular.info/p/update-tennessee-house-speaker-secretly.

611 Pennsylvania Ave., S.E. #337 • Washington, D.C. 20003 • (202) 780-5750
campaignforaccountability.org

in Cumberland County,[2] even when the Speaker is not conducting official business, he resides in Nashville.[3]

It appears Speaker Sexton moved to Nashville before his 2021 home purchase.[4] Documents suggest his youngest child started kindergarten at a private school outside of Nashville in fall 2020, and she is currently enrolled in the school.[5] Speaker Sexton's wife, Lacey McRae Sexton, "liked" several photos on the school's Facebook page at least as far back as August 2020, including a photograph of the 2020 kindergarten class and a picture of two kindergarteners, one of whom appears to be the Sextons' daughter.[6]

Speaker Sexton appears to have gone to some lengths to hide his Nashville residency, purchasing the house through the "Beccani Trust,"[7] though the transaction was financed through the Crossville branch of One Bank Tennessee,[8] where, according to the biography Speaker Sexton maintains on his official website, he both sits on the board of directors and is employed, working on "business development."[9]

Speaker Sexton's actual place of residence is significant because, under Tennessee law, "the place where a married person's spouse and family have their habitation is presumed to be the person's place of residence,"[10] although it is possible to overcome this presumption if the person lives apart from their family. Speaker Sexton confirmed his Nashville residency to well-known Tennessee reporter Phil Williams, explaining that because he must be in Nashville so often, "it's easier to have his family here."[11]

Tennessee law provides that state legislators "shall be paid an expense allowance equal to the allowance granted federal employees for expenditure reimbursement for the Nashville area for each legislative day" and for each day spent attending other official meetings and events tied to state business. [12] Members whose "principal residence is fifty (50) miles from the capitol or less," however, "shall only be paid an expense allowance for meals and incidentals equal to the allowance granted federal employees for such expenses . . ."[13] In other words, legislators who

---

[2] Heather Mullinex, Sexton Defends Residency, Per Diem, *Crossville Chronicle*, April 17, 2023, available at https://www.crossville-chronicle.com/news/local_news/sexton-defends-residency-per-diem/article_26212482-dd54-11ed-8579-1fc17c33b334.html .
[3] Judd Legum, Update: Tennessee Speaker Admits His Family Lives Hours Away from the District He Represents. *Popular Information*, April 11, 2013, available at https://popular.info/p/update-tennessee-speaker-admits-his
[4] Legum, *Popular Information*, Apr. 13, 2023.
[5] Judd Legum, *Twitter*, April 10, 2023, available at https://mobile.twitter.com/JuddLegum/status/1645402825852166144.
[6] Facebook, last visited April 19, 2033 (screenshots available upon request from law enforcement).
[7] Legum, *Popular Information*, Apr. 13, 2023.
[8] *Id*.
[9] Speaker Sexton's Biography, available at https://www.capitol.tn.gov/house/speaker.html.
[10] TN Code § 2-2-122(5) (2021).
[11] Phil Williams, *Twitter*, April 10, 2023, available at https://twitter.com/NC5PhilWilliams/status/1645462097499701248.
[12] TN Code §3-1-106 (b)(1) (2021).
[13] TN Code § 3-1-106(b)(3).

live more than 50 miles away from the capitol may claim a per diem that includes lodging, but members who reside within 50 miles of the capitol may not claim the lodging per diem, and are instead limited to claiming only the rate for meals and incidentals absent an unusual circumstance in which they are unable to return home.

The General Services Administration ("GSA") sets the federal employee per diem for each fiscal year, from September through October. The lodging rate for Nashville was $234 in October and November 2021, $187 in December 2021 and January 2022, $230 from February through June of 2022, $207 in July and August 2022, $234 in October and November 2022, $187 in December 2022 and January 2023, and $230 in March through June of 2023.[14] The GSA rate for meals and incidentals has been $79 since October 2021 but was $61 in from October 2020-October 2021.[15]

While Speaker Sexton appears to live in Nashville year-round, he has claimed the lodging per diem allowed to legislators who live outside of Nashville. Speaker Sexton's conduct is all the more egregious because as Speaker of the House, it appears he is responsible for approving all per diem requests, including his own, before they are forwarded to the Office of Legislative Administration for payment.[16] This afforded Speaker Sexton the opportunity to approve his own forms, obviating the need for him to explain to another person why, as a legislator who lived within 50 miles of the capitol, he was entitled to take a per diem for lodging authorized only for those legislators living more than 50 miles from the capitol.

Despite living in a house less than seven miles from the state capitol as of October 2021, and apparently having lived in another residence also close to the capitol since at least August 2020, a review of the ledgers maintained by the Tennessee Office of Legislative Administration shows Speaker Sexton has consistently and continuously claimed the lodging per diem authorized by state law for those members of the legislature who live more than 50 miles outside the capitol.[17]

From August 1, 2020 to December 31, 2020, the earliest date CfA can establish Speaker Sexton began residing in Nashville (though he may have begun living in Nashville earlier), Speaker Sexton filed for a lodging per diem of $223 on 28 days and a lodging per diem of $234 on 19 days.[18] At the $223 and $234 rates, Speaker Sexton appears to have deliberately and wrongly applied for, self-approved, and improperly received taxpayer funded payments in the amount of $10,690.

---

[14] *See* U.S. General Services Administration Per Diem Rates, available at https://www.gsa.gov/travel/plan-book/per-diem-rates (hereinafter "GSA Per Diem Rates").
[15] *Id.*
[16] *See* Tennessee Request for Individual Payment (attached as Exhibit 1).
[17] The ledgers indicate Speaker Sexton relied on the highest lodging rate allowed by the GSA during the 2021, 2022, and 2023 fiscal years – $234 per night – regardless of the month even though in some months the GSA lodging per diem was lower: $187 in December and January, $230 in February-June, and $207 in July and August. *See* GSA Per Diem Rates and Office of Legislative Administration, House Ledgers for 2020 – 2023, available at https://www.capitol.tn.gov/joint/staff/administration/ .
[18] *See* Office of Legislative Administration, House Ledgers for 2020, available at https://www.capitol.tn.gov/Archives/Joint/Staff/Administration/2020%20House%20Ledger%20Sheet_12-29-20.pdf.

From January 1, 2021 to December 31, 2021, Speaker Sexton filed for a lodging per diem of $234 on 144 days.[19] This suggests Speaker Sexton may have deliberately and wrongly applied for, self-approved, and improperly received taxpayer funded payments totaling $33,696.

From January 1, 2022 to December 31, 2022, Speaker Sexton filed for a lodging per diem of $234 on 111 days.[20] This suggests Speaker Sexton may have deliberately and wrongly applied for, self-approved, and improperly received tax-payer funded payments totaling $25,974.

From January 1, 2023 to March 16, 2023 (the most recent reimbursement date made public), Speaker Sexton filed for a lodging per diem of $234 on 41 days. This suggests Speaker Sexton may have deliberately and wrongly applied for, self-approved, and improperly received taxpayer funded payments totaling $9,594.

In sum, since August 2020, Speaker Sexton appears to have deliberately and wrongly applied for, self-approved, and improperly received taxpayer funded payments totaling approximately $79,954.

## Legal Violations

*Theft of Property*

As you know, under Tennessee law, "a person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent."[21] Obtaining property valued at $10,000 or more but less than $60,000 it is a class C felony, and obtaining property valued at $60,000 or more but less than $250,000 is a class B felony.[22] Further, in prosecuting theft of property, "multiple criminal acts committed against one or more victims may be consolidated into a single count if the criminal acts arise from a common scheme, purpose, intent or enterprise,"[23] and the monetary value of the property from multiple criminal acts charged as a single count "shall be aggregated to establish" the value of the property obtained.[24]

As you may recall, in 2018, your office prosecuted then-Nashville Mayor Megan Barry for theft of property for causing between $10,000 and $60,000 of Metropolitan Nashville Davidson County Tennessee funds to be expended between March 1, 2016 and January 26, 2019, without the effective consent of Metropolitan Nashville Davidson County and with the intent to deprive

---

[19] *See* Office of Legislative Administration, House Ledgers for 2021, available at https://www.capitol.tn.gov/Archives/Joint/Staff/Administration/2021%20House%20Ledger%20Sheet_12-9-21.pdf
[20] *See* Office of Legislative Administration, House Ledgers for 2022, available at https://www.capitol.tn.gov/Archives/Joint/Staff/Administration/2022%20House%20Ledger%20Sheet_1-13-23.pdf
[21] TN Code §39-14-103 (2021).
[22] TN Code § 39-14-105(a)(4)-(5) (2021).
[23] TN Code §39-14-105(b)(1) (2021).
[24] TN Code § 39-14-105(b)(2) (2021).

Metropolitan Nashville Davidson County of the property.[25] The theft charges stemmed from domestic and international travel expenses the mayor and her bodyguard, with whom she was having an affair charged to the city of Nashville.

Based on the ledgers maintained by the Office of Legislative Administration, it appears Speaker Sexton appears to have intentionally caused Tennessee state funds of approximately $79,954 to be expended between August 1, 2020 and March 31, 2023, without the consent of the citizens of Tennessee, a Class B felony, punishable by eight to thirty years in prison and up to $25,000 in fines.[26]

*Honest Services Wire Fraud*

Honest services fraud is a scheme to defraud another of the intangible right to honest services through a scheme to violate a fiduciary duty by bribery or kickbacks.[27] Speaker Sexton appears to have self-approved and submitted forms to the Office of Legislative Administration that intentionally and falsely represent that he was entitled to per diem expenses for a person living more than 50 miles away from the capitol. In reality, Speaker Sexton appears to have resided only a few miles from the capitol. Speaker Sexton likely either received payments made through direct deposit into his bank account, or he received checks that he deposited into his account. In either case, by self-approving payments to which he was not entitled and depositing those payments into a personal bank account, Speaker Sexton may have violated the federal honest services wire fraud statute.[28]

*Tax Underpayment and Fraud*

In submitting his requests for per diem lodging payments from August 1, 2020 through March 31, 2023, Speaker Sexton reported his lodging per diem requests as non-taxable[29] in apparent violation of federal tax law.

An employee generally must report all payments from an employer as taxable gross income,[30] unless a specific exception applies, such as the exception for certain expenses incurred, in connection with the performance of services as an employee, and reimbursed under an authorized reimbursement arrangement (an "accountable plan").[31] Reimbursements for an employee's "travel that is not away from home" is generally treated as an amount paid under a "nonaccountable plan."[32] IRS guidance permits employers to establish reimbursement

---

[25] State of Tennessee, *Davidson County vs. Megan Christine Barry*, Information, No. 2018-I-112, March 6, 2018, available at https://fox17.com/news/local/gallery/mug-indictment-former-nashville-mayor-megan-barry?photo=3
[26] TN Code § 40-35-111 (2021).
[27] 18 U.S. §§ 1343 and 1346.
[28] 18 U.S.C. §§ 1343 and 1346.
[29] *See* Office of Legislative Administration, House Ledgers, 2020-2023.
[30] § 61(a)(1) of the Internal Revenue Code of 1986, as amended (the "IRC").
[31] § 62(a)(2) of the IRC.
[32] Treas. Reg. § 1.62-2(d)(2).

arrangements that pay per diems to cover lodging, meal, and incidental expenses, but only when an employee is performing services for the employer and traveling away from home.[33]

Permitted reimbursements under an accountable plan are excluded from an employee's gross income.[34] However, payments under a nonaccountable plan are included in an employee's gross income (*i.e.*, reported as wages on an IRS Form W-2 and subject to withholding of employment and income taxes).[35] The GSA and IRS annually set allowed per diem amounts,[36] and the IRS has issued guidance that a per diem, intended to cover lodging, meal, and incidental expense for an employee traveling away from home, which is not in excess of the allowed per diem may be excluded from an employee's taxable income.[37] Payments either in excess of the allowed per diem or not permitted to be reported as an allowed per diem at all (*e.g.*, because the payments were for lodging, meal, or incidental expenses not incurred while traveling away from home) would be included in an employee's taxable income.[38]

Speaker Sexton submitted and self-approved expense reimbursement paperwork, apparently to claim the lodging per diem for a legislator that lives outside of Nashville, even though he lived in Nashville year-round. Speaker Sexton's false expense reimbursement filings presumably caused his IRS Forms W-2 to report all his $234 lodging per diem payments as nontaxable even though they should have been reported as taxable wages because he was not traveling away from home when he received the per diems. If this is what occurred, Speaker Sexton should have reported the per diems as taxable wages on his IRS Form 1040 (U.S. Individual Income Tax Return) at Line 1 but presumably he failed to do so, assuming his IRS Form W-2 treated such per diems as nontaxable and Speaker Sexton prepared his Form 1040 consistently with his Form W-2

In addition to taxes and interest on the income Speaker Sexton possibly failed to properly report,[39] he may be liable for additional accuracy-related or fraud penalties.[40] Speaker Sexton would be liable for the accuracy-related penalty, which is 20 percent of the tax underpayment,[41] if his underpayment is attributable to either (i) negligence or disregard of rules or regulations[42] or (ii) any "substantial understatement"[43] of income tax.[44] Further, Speaker Sexton would be liable

---

[33] Treas. Reg. §§ 1.62-2(d)(3)(ii) and 1.62-2(f)(2); Rev. Proc. 2019-48, 2019-51, § 3.
[34] Treas. Reg. § 1.62-2(c)(4); Rev. Proc. 2019-48, 2019-51, § 7.03.
[35] Treas. Reg. § 1.62-2(c)(5). Rev. Proc. 2019-48, 2019-51, § 7.04.
[36] *See e.g.*, IRS Notices 2021-52 and 2022-44.
[37] Rev. Proc. 2019-48, 2019-51, §§ 4.01, 5.01, and 7.03.
[38] *Id.* at § 7.04.
[39] §§ 6601 and 6621 of the IRC.
[40] A taxpayer generally cannot be liable for both penalties. § 6662(b) (flush language).
[41] § 6662(a) of the IRC.
[42] § 6662(c) of the IRC. Negligence includes any failure to make a reasonable attempt to comply with the provisions of the IRC and disregard includes any careless, reckless, or intentional disregard.
[43] § 6662(d)(1). Substantial understatement of income tax generally means an understatement of income tax that exceeds the greater of (i) 10% of the tax required to be shown on the income tax return for the applicable year or (ii) $5,000.
[44] § 6662(b) of the IRC.

for the fraud penalty, which is generally 75 percent of the tax underpayment, if his underpayment is attributable to fraud.[45]

Speaker Sexton's actions indicate at the very least, he may be subject to the accuracy-related penalty, if not the fraud penalty, because (i) he knew that he had moved to Nashville and no longer lived in Crossville, (ii) he intentionally submitted paperwork to obtain nontaxable per diem reimbursements that required him to indicate that he lived at least 50 miles outside of Nashville, (iii) he reviewed and approved his own paperwork in his capacity as Speaker of the House, knowing that he did not live where he had indicated, (iv) legislators who lived within 50 miles of Nashville submitted paperwork that did not claim the lodging per diem and caused their other types of per diems to be taxable,[46] and (v) Speaker Sexton reviewed and approved the other legislators' paperwork, putting him on notice of appropriate practice, if he was not already aware.

## Conclusion

By submitting for payments to which he was not entitled, Speaker Sexton appears to have violated the trust of the people of Tennessee in addition to state and federal criminal laws and federal tax law. Speaker Sexton's alleged actions are all the more reprehensible given that, as Speaker of the House, he is charged with reviewing and approving all requests for per diems, a situation that allowed him to submit and self-approve his own improper payment requests. The citizens of Tennessee have the right to expect the highest standards of conduct from their elected leaders; Speaker Sexton has failed them. Campaign for Accountability look forward to your prompt investigation of this important matter.

Sincerely,

Michelle Kuppersmith
Executive Director

cc: Internal Revenue Service

Tennessee House Select Committee on Ethics

---

[45] § 6663 of the IRC. The definition of fraud is primarily defined in caselaw and not the IRC. In general, civil tax fraud has been defined as an intentional wrongdoing with the specific purpose of evading a tax known or believed to be owing. *Avenell v. Comm'r*, T.C. Memo 2012-32.

[46] *See* Office of Legislative Administration, House Ledgers for 2020-2023 (Per diems for representatives living within 50 miles of Nashville are generally lower, not including the lodging per diem, and appear in the taxable column. Per diems for representatives living more than 50 miles from Nashville are generally higher, including the lodging per diem, and appear in the nontaxable column.).

# EXHIBIT 1

# REQUEST FOR INDIVIDUAL PAYMENT

TO: ☐ Speaker of the Senate ☐ Speaker of the House

FROM: ☐ Senator ☐ Representative _____

DATE: _____

SUBJECT: Request for Travel Payment and Per Diem

This is to request your approval of payment of travel and per diem of the recent meeting which I attended.

Meeting: _____
Date of Meeting: _____
Place: _____

TRAVEL:

☐ Mileage: TO: _____
FROM: _____
_____ miles at _____ cents per mile = $_____

☐ Airline: Please attach passenger receipt or copy of ticket (including tickets charged to state credit card) $_____

☐ Lodging: Only Room Rate & Tax Reimbursed (Applies to Out-of-State Lodging - Must have itemized receipt) $_____

☐ Parking: ☐ Airport ☐ Hotel (Must have receipt) $_____

☐ Taxi: $_____

☐ Other: Please explain under remarks $_____

PER DIEM: _____ days at $_____ per day = $_____
(for LA office use only)

REGISTRATION: Check One
☐ Pre-Paid ☐ Receipt Enclosed ☐ To Be Billed $_____

TOTAL EXPENSES: (for LA office use only) $_____

REMARKS: _____

APPROVED:

_____    _____
Speaker                    Date

BY:_____  _____
   Secretary or Submitter   Extension

For Legislative Administration Use Only

Sumbit to Speaker - KEEP BLUE copy for your files

After Speaker's Approval:
White, Green copies: Legislative Adminsitration
Pink copy: Member's Office
Yellow copy: Speaker's Office
1995:lc

Voucher # _____     **APPROVED**

Amount _____     Initials _____

Date _____     Date _____