THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:22-cr-00282 |
| | ) | JUDGE RICHARDSON |
| GLEN CASADA and CADE COTHREN | ) | |

**ORDER DENYING MOTION FOR
COMPELLED DISCLOSURE OF *BRADY* AND *GIGLIO* MATERIAL**

Pending before the Court is the "Joint Motion [of Defendants] to Compel Disclosure of *Brady/Giglio* Material and Information" (Doc. No. 271, "Motion"). Via the Motion, Defendants request "an Order compelling the government to provide all exculpatory material required by *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) and their progeny, including specific items requested [in the Motion]." (*Id.* at 1). The Government filed a response in opposition of the Motion. (Doc. No. 275), and Defendants filed a reply in support of the Motion (Doc. No. 283).

Via the Motion, Defendants essentially request the Court to order the government to produce any evidence or information within the scope of the well-establish and well-known rules announced in *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).

Defendants' request in the Motion is for an order that is both (i) general, i.e., compels the Government to disclose *anything* (even if not identified or specified in the Motion and even if totally unknown to Defendants); and (ii) specific, i.e., compels the Government to disclosure what the Motion calls "specific items requested [by Defendant in the Motion]" of which Defendants are

aware and that (according to Defendants) are within the scope of *Brady* and/or *Giglio*.[1] The Court

will address each request in turn.

As for the first request, the Court declines to go through the unhelpful exercise of ordering

the Government to do what it is already required to do, namely, comply as a general matter with

its obligations under *Brady* and *Giglio*. It is indisputable that the Government must comply with

*Brady* and *Giglio*.[2] This alone suggests that the requested general order would be redundant. But

such redundancy is made even more apparent by the fact that the Government has already been:

(i) reminded by the Court, in this case in particular, "of its obligation under *Brady v. Maryland*,

373 U.S. 83 (1963), to disclose evidence favorable to the defendant and material to the defendant's

guilt or punishment"; and (ii ordered [by the Court] to comply with "*Brady* and its progeny [which

would include *Giglio*]." (Doc. No. 11). This reminder, and this order, to the Government has been

---

[1] Apparently, these "specific items" are things requested in the letter to the Government that is Exhibit B to the Motion (Doc. No. 271-2). The letter requests disclosure (generally) of specific *kinds* of documents of a specific *nature* (i.e., related to particular alleged activities of particular potential Government witnesses), but it is a stretch to say that the letter requests "specific items."

[2] The Court notes that in common parlance, to say that something (some entity) or someone "must" do something generally is not to say that it absolutely has to do something, but rather that it had better do so because otherwise, it must face the consequences. For example, to say that a corporation "must" pay the income taxes its owes—a fair and important statement—is really to say that the corporation had better pay its income taxes owed because if it does not, it must face the (potentially very significant) consequences for not paying income taxes owed.

So it is with the statement that the Government must comply with its *Brady* and *Giglio* obligations. The statement is, of course, very fair and important and expressive of the firm expectations of the Government imposed by the law. But in more practical terms, what the statement means is that the Government (and relevant personnel working for the Government) had better comply with their *Brady* and *Giglio* obligations because if they do not, they must face the consequences—which could be severe indeed. The order issued by the magistrate judge in this case reflects the gist of this footnote; it first orders the Government to comply with its *Brady* obligations, then states the potential consequences of not doing so:

> The government is ordered to comply with Brady and its progeny. The failure to do so in a timely manner may result in consequences, including dismissal of the indictment or information, exclusion of government evidence ,or witnesses, adverse jury instructions, dismissal of charges, contempt proceedings, sanctions by the Court or any other remedy that is just under the circumstances.

(Doc. No. 11).

given by a magistrate judge of this Court, in compliance with the Due Process Protection Act 0f 2020, for years now in every criminal case, and for this and other reasons the Court has little reason to doubt that federal prosecutors are well aware of their obligations. But even more to the point, the Court has *already* generally ordered the Government to comply with *Brady* and *Giglio*, and the Court can and does decline to issue a redundant order.

That leaves the second request. Defendants provide no authority for the proposition that a court that has issued a general order to the Government to comply with its *Giglio* and *Brady* obligations must thereafter issue upon request an order for the Government to comply with its *Brady* and *Giglio* obligations with respect specifically to whatever particular kind of information the defendant wishes to focus on (hereinafter "defendant-specified information"). And the Court perceives no reason why it has to do so, or, for that matter, why it *should* do so even if it does not have to do so. In other words, even if the defendant-specified information is within the scope of the Government's *Brady* and *Giglio* obligations—something that for multiple reasons is often difficult or indeed impossible for the court to determine before trial—the Court is unconvinced that it must, or even should, devote judicial attention to pronouncing with respect to the defendant-specified information what it has already pronounced generally: that the Government must comply with its *Brady* and *Giglio* obligations or face the music for not having done so.

Assuming, as seems likely (though unestablished by Defendants), that the Court has the discretion to issue or not issue an order with respect to defendant-specified information, the Court typically (and here) exercises its discretion not to do so, for two reasons. First, the Court is disinclined to expend judicial resources to make a determination that (i) may ultimately prove unnecessary to make; and (ii) would require the Court to speculate as to overall significance of the

defendant-specified information and sometimes (and absolutely in the present case) speculate as to the substance of any defendant-specified information that exists, if indeed *any* exists.

As noting above, the Court has advised the Government of its *Brady* and *Giglio* obligations and has ordered the Government to comply with them. In the hypothetical event of conviction, the Government (not to mention personnel with the Government) will be accountable for whatever decisions it makes about *Brady* and *Giglio* disclosures—what it did not disclose, what it did disclose, and when and how it disclosed what it did disclose. Moreover, before or during trial, either Defendant is free to request a remedy if he believes that particular information produced by the Government is *Brady* or *Giglio* material and was produced later than it should have been given applicable timing requirements for the disclosure of such material. But the Court declines to impose as a prophylaxis the particular measure suggested by Defendants (a second order requiring the Government to comply with its *Brady* and *Giglio* obligations) in an attempt to ensure the Government's compliance with those obligations.

Accordingly, the Motion (Doc. No. 271) is **DENIED**.[3]

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[3] As the Motion is subject to denial based on the rationale set forth herein, the Court forgoes stating alternative rationales for denial of the Motion.

It is certainly possible that Defendants were not hopeful of receiving the order that they requested, and instead filed the Motion primarily to make a record of their request (especially their request for specific items) because such a record potentially could prove useful in the event of the presence of post-trial *Brady* and/or *Giglio* issues following conviction on one or more counts. But this possibility played no part in the Court's denial of the Motion.