UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:22-cr-00282 |
| | ) | JUDGE RICHARDSON |
| GLEN CASADA and | ) | |
| CADE COTHREN, | ) | |
| | ) | |
| Defendants. | ) | |

## POSITION OF DEFENDANT GLEN CASADA WITH RESPECT TO PRESENTENCE REPORT

Pursuant to Local Criminal Rule 32.01(c)(3), Glen Casada provides his objections to the Presentence Report (PSR) prepared in this matter.

## Guidelines calculations

- **Casada objects to the application 2C1.1(b)(1), requiring a 2-level enhancement for "more than one bribe or extortion."**

U.S.S.G. §2C1.1 Application Note 2 provides guidance in the assessment of this enhancement, providing:

More than One Bribe or Extortion.
Subsection (b)(1) provides an adjustment for offenses involving more than one incident of either bribery or extortion. Related payments that, in essence, constitute a single incident of bribery or extortion (e.g., a number of installment payments for a single action) are to be treated as a single bribe or extortion, even if charged in separate counts.

6th Circuit jurisprudence also sheds light on the circumstances when this enhancement is appropriate (or not appropriate). In discussing bribes paid for admittance into a dental residency program, the Court provided that multiple bribe payments made by one resident would be a single incident. *United States v. Hills*, 27 F.4th 1155, 1194 (6th Cir. 2022) (emphasis added). Similarly,

the Court has articulated that the enhancement is appropriate when there are distinct categories of payment, providing "it is undisputed that the agreement between Foggia II and RSV provided for two distinct categories of payment: a general consultancy fee and a $60,000 "success fee" to be paid upon Pine Hollow's receipt of an operating permit." *United States v. Canestraro*, 282 F.3d 427, 432 (6th Cir. 2002). In *United States v. Ford*, the 6th Circuit articulated non-exclusive factors Courts can apply to determine whether the enhancement applies. These factors included whether the payments were made to influence a 'single action'. *United States v. Ford*, 344 F. App'x 167, 170 (6th Cir. 2009).

The common thread in these cases, consistent with the plain reading of the Sentencing Commission's application notes, is that the focus is not on number of payments towards a single incident but instead on number of wrongful acts (or "incident" of bribery or extortion). The Indictment and proof presented at trial point towards allegations that Cothren – via Phoenix Solutions – paid bribes to Casada for assistance in the operations of Phoenix Solutions, such as shielding Cothren's role in Phoenix and pressuring the State to approve payments to Phoenix[1]. Every payment made in this case was allegedly to advance that singular goal – the day-to-day operations and success of Phoenix Solutions.

A typical bribery scenario involves a payment of X sum to perform Y action. For example, a businessman paying $10,000 to an agency head to award a contract is a classic bribery scenario. Whether $10,000 is paid all at once or in intervals does not overcome the reality that it is one bribe because it is intended to influence one action. In the same hypothetical, had the businessman offered to pay the agency head a percentage of the ongoing business profits in exchange for approval of the contract, it would still be one bribe, only for an undetermined amount. Again,

---

[1] Casada disputes that there was proof that he personally did any of these things, as outlined in his Motion for New Trial.

whether the payments are all at once or periodic is not the point. This is because the focus is on the actions taken by the agency head, not the number of payments. The same is true here – each payment was made based on Phoenix Solutions' success for the singular "act" of assisting in the operations of the business.

Notably, Casada himself received only one payment from Phoenix Solutions related to the Postage and Printing Account (PPA) – a $4,134.64 check from Phoenix Solutions to Casada dated April 7, 2020[2] (Gov. Tr. Ex. 413). Even viewed in the light most favorable to the prosecution, Casada was paid for his assistance in the ongoing operations of Phoenix Solutions. Put another way, there was no payment-in-exchange-for-official-act alleged or proven. In other words, the evidence did not show that Phoenix Solutions paid Casada a set sum to, for example, pressure a State Representative or the Speaker's Office.

The facts developed in this case prove that the payments were made towards a single action, and as such the 2-level multiple bribe enhancement should not apply.

- **Casada objects to the application 2C1.1(b)(2), requiring a 10-level enhancement for a loss amount of $211,443.48 (greater than $150,000 but not more than $250,000)**

In assessing loss amount, the PSR writer opined that the "Value of anything obtained or to be obtained by a public official or others acting with a public official" is $211,443.48. In reaching this number, the PSR writer totaled payments received into Phoenix Solutions bank account from PPA work ($51,947) and caucus and campaign work ($159,496.48), with no offset of credit for expenses, work performed, fair market value of services, or otherwise.

Relevant conduct

---

[2] The $500 "payment" related to Jason Zachary was not sent by Phoenix to Casada – Phoenix never possessed the $500 at issue. The $2500 payment was not for PPA work but instead was for work on Casada's own campaign.

The caucus and campaign work is not properly classified as "relevant conduct" under U.S.S.G. §1B1.3. The 6th Circuit in *United States v. Catchings*, 708 F.3d 710, provided that although "relevant conduct is not limited to conduct for which the defendant has been convicted," the conduct must "amount [ ] to an offense for which a criminal defendant could potentially be incarcerated." *United States v. Maken,* 510 F.3d at 658–59; *United States v. Shafer,* 199 F.3d at 831. In short, relevant conduct under §1B1.3 must be criminal conduct. *See United States v. Schaefer,* 291 F.3d 932, 940 (7th Cir.2002) (noting that its holding "that relevant conduct under §1B1.3 of the Guidelines is limited to criminal conduct" is "amply supported" by case law in the Third, Fifth, and Eighth Circuits). *United States v. Catchings*, 708 F.3d 710, 720 (6th Cir. 2013).

Despite ample opportunity, the prosecution has never claimed that the caucus and campaign work was illegal. The caucus and campaign work was obviously well known to the prosecution at the time of the charging decision, as it was referenced throughout the Indictment. Yet none of the conspirators were charged with any offense based on campaign and caucus work[3]. Similarly, the prosecution steadfastly refused to entertain that the campaign and caucus work was a prior bad act to implicate the F.R.E. 404(b) analysis. Instead, the prosecution averred, and the Court ultimately ruled, that the campaign and caucus work was res gestae evidence relevant to motive in order to prove that the conspirators performed PPA work in order to gain a foothold into doing caucus and campaign work.

The prosecution's reluctance to frame the caucus and campaign work as criminal was well-founded. At the time of the conduct at issue and the filing of the Indictment, it was well settled in the 6th Circuit that to sustain a cause of action for wire fraud or mail fraud, economic loss was required. See eg *United States v. Sadler*, 750 F.3d 585, 590 (6th Cir. 2014). It is not reasonably

---

[3] In view of the 20-count indictment against Casada based on $4600 of "bribes," it is highly doubtful that the prosecution simply cut Casada a break.

4

disputed, based on trial evidence including witness testimony and the prosecution's representation that no restitution is owed, that no individual or entity suffered a loss based on the operations of Phoenix Solutions. While after the trial of this matter concluded, the Supreme Court in *United States v. Kousisis*, 145 S.Ct. 1382 (2025) clarified the circuit split in holding that economic loss was not required, it does not change the analysis that at the time of the offenses, the 6th Circuit required economic loss. In the present matter, there simply was not one. Penalizing Casada with a higher guideline range based on newly developed law post-trial is unfair and would violate procedural and substantive due process.

Additionally, there is simply no proof that Casada made a misrepresentation – material or otherwise – regarding caucus and campaign work. Nor is there sufficient proof any conspirator made the required *material* misrepresentation in order to subject Casada to criminal exposure for the caucus and campaign work.

Loss Amount

Regardless of whether the Court includes the campaign and caucus work as relevant conduct along with the PPA work ($211,443.48) or limits its focus to the $51,947 in PPA work, the amount of loss in this case does not meet the threshold for a guideline enhancement as to Casada.

Per U.S.S.G. §2C1.1(b)(2), in determining loss, Courts must apply the greatest of:

1) the value of the payment,
2) the benefit received or to be received in return for the payment,
3) the value of anything obtained or to be obtained by a public official or others acting with a public official,
4) the loss to the government from the offense.

5

2C1.1 Application Note 3 provides "Loss, for purposes of subsection (b)(2), shall be determined in accordance with Application Note 3 of the Commentary to §2B1.1." 2B1.1 Application Note 3(D) provides, in pertinent part: "[l]oss shall be reduced by the following: (i) [t]he money returned, and the fair market value of the property returned and the services rendered, by the defendant or other person acting jointly with the defendant, to the victim before the offense was detected . . ..

The 6th Circuit in *United States v. Kozerski* 969 F.3d 310 (6th Cir. 2020) recognized two general principles that apply to "loss" calculations under §2B1.1 in the context of offenses involving fully performed, although fraudulently obtained, contracts, exactly as those alleged here. Those principles are that "loss generally refers to the pecuniary harm to the victim" and "loss generally turns on adding up the crime's face value and subtracting any value returned to the victim." *Id*. (citing USSG §2B1.1, cmt. (n. 3(A), (E))). *United States v. Hills*, 27 F.4th 1155, 1197 (6th Cir. 2022).

Applying 6th Circuit case law and the U.S.S.G. application notes, the loss – whether calculated under sections 2 or 4 of 2C1.1(b)(2) – must be reduced by the fair market value of property served or services rendered, and the focus is squarely on the loss to the victim. It is not reasonably in dispute, and numerous government witnesses acknowledged, that no money or property was lost by either the State or caucus/constituent mailer customers because i) Phoenix Solutions, Rightway Consulting and REA charged a fair price, ii) Phoenix Solutions produced a quality product, and every customer got what they paid for. There was similarly also no dispute that Phoenix Solutions, Rightway Consulting and REA incurred expenses in providing its services. While the PSR does not account for any of these realities, the result is that the loss amount under sections 2 or 4 of 2C1.1(b)(2) is zero, resulting in no guidelines enhancement.

Turning to sections 1 and 3 of 2C1.1(b)(2) – value of the payment and value of anything obtained – the loss amount as related to Casada is $4600, representing the amount (or benefit) he received from Phoenix Solutions regarding PPA work. Casada should not be held accountable for any other payments. The 6th Circuit has held that "the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy." *United States v. Swiney*, 203 F.3d 397, 402 (6th Cir. 2000) (citation omitted). To hold a defendant responsible for the jointly undertaken activity of others, it was necessary to make particularized findings that such acts were within the scope of the defendant's agreement and foreseeable to him. *See United States v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002), *United States v. Hills*, 27 F.4th 1155, 1195–96 (6th Cir. 2022). The proof at trial was that Casada and Robin Smith kept their monetary interactions with Phoenix Solutions separate. Smith specifically noted that Casada was excluded from much of the dealings of Phoenix Solutions, and that she deliberately did not share information about her clients with Casada. The proof at trial showed separate arrangements with separate roles between Casada and Phoenix Solutions on the one hand, and Smith and Phoenix Solutions on the other hand.

Further, it cannot be reasonably argued that Casada or his alleged conspirators "obtained" the gross amount of any money paid. Per 6th Circuit law, expenses incurred and fair market value of services must be deducted. The trial evidence revealed that Casada's profit from Phoenix Solutions from the PPA dealings was $4600.

So, the greatest loss amount attributable to Casada for the 2C1(b)(2) enhancement is $4600, resulting in zero guideline enhancement. This outcome is not unforeseen to Congress when enacting the Sentencing Guidelines. The guideline at issue provides ample enhancements that do not hinge on loss, including whether a public official was involved, whether said public official

7

was elected, and whether more than one bribery occurred. Indeed, per the 2C1.1 guidelines, the absolute minimum guidelines level for an elected public official convicted of a bribery offense is offense level 18, which at 27-33 months is hardly a "slap on the wrist." While it is admittedly uncommon to have a fraud case with a zero-loss enhancement, Congress in enacting the $6500 enhancement threshold at §2B1.1 clearly contemplated such a result.

- **Casada objects to the application of 2S1.1(b)(3) requiring a 2-level enhancement for Sophisticated Money Laundering**

In light of the trial proof supporting the money laundering convictions, it is hotly contested whether there was sufficient evidence to support a charge of money laundering at all, due to the simplicity and ease in understanding the monetary transactions at issue as evidence by Agent Hunter's testimony[4]. But regardless, there is simply insufficient evidence to support the application of a "sophisticated laundering" enhancement.

Per Application Note 5, "sophisticated" laundering typically involves the use of–

(i)     fictitious entities;

(ii)    shell corporations;

(iii)   two or more levels (i.e., layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or

(iv)    offshore financial accounts.

The 6th Circuit has upheld the sophisticated-laundering enhancement when defendants have engaged in multi-step financial transactions designed to evade *detection*. See United States v. Vela-Salinas, 677 F. App'x 224, 231 (6th Cir. 2017); *United States v. Mitan*, No. 21-5834, 2025 WL 1392242, at *6 (6th Cir. Apr. 9, 2025) (emphasis added).

---

[4] Casada reiterates and incorporates his arguments on this issue put forth in his Motion for New Trial, DE 372.

8

At worst, Mr. Cothren used an alias to accomplish the underlying alleged criminal conduct upon which the money laundering convictions were based. But even assuming that creating an alias is "sophisticated" – a point Casada disputes - Courts have held that engaging in sophisticated criminal acts to obtain control of the proceeds does not support "sophisticated money laundering." "[I]f a defendant sells drugs using a highly sophisticated network of front businesses but engages in no other 'complex or intricate' efforts on the back end to conceal the unlawful origin of the drug sale proceeds, id. §2S1.1 cmt. 5(A), then the enhancement for sophisticated laundering does not apply." *United States v. Otunyo*, 460 U.S. App. D.C. 274, 283, 63 F.4th 948, 957 (2023). Phoenix Solutions itself was legally incorporated and a legitimately formed business, being formed in New Mexico under an alias and possessing a valid Tax Identification Number. The bank accounts and checks were written to legally formed entities or to real individuals.

**Offense Conduct/Factual allegations[5]**

Casada requests the following changes to the PSR.

Paragraph 15 – The Tennessee House Speaker's office did not have the authority "to approve or deny a vendor to provide service or any mailing funded by the Mailer Program." Instead, the Speaker's Office had the authority to deny using Mailer Program funds based upon the content of the mailers themselves.

Paragraph 16 – The third and fourth sentences state: "Smith, Casada and Cothren told others, to include members of the Tennessee General Assembly and the House Speaker's office, that Phoenix Solutions was run by an individual named 'Matthew Phoenix.' Smith, Casada and Cothren claimed

---

[5] Mr. Casada intends to appeal his convictions, and as such objects to the "Offense Conduct" section of the PSR. Understanding that the PSR must provide some recitation of the offense conduct, Casada makes more specific objections herein.

9

that Matthew Phoenix was an experienced political consultant who had worked for Jamestown Consultants, a real company based in Washington, D.C." These representations were made by Mr. Cothren and Mrs. Smith, not by Mr. Casada.

Paragraph 17 – Mr. Casada did not conceal Cothren's involvement in Phoenix Solution and objects to the framing of the payments he received as "kickbacks."

Paragraph 18 - Mr. Casada objects to the inclusion of this paragraph in its entirety, including specifically the framing of the payments he received as "kickbacks" and any agreement he made to use his legislative position or pressure anyone. Mr. Casada also objects to the implication that there was a vendor approval process, as there was not.

Paragraph 27 – Mr. Casada objects to the first sentence in its entirety, including that there was an improper agreement, the framing of payments as "bribes and kickbacks." Further, there is no evidence that Mr. Casada himself "began a series of efforts to expedite" anyone to do anything – the trial testimony was the opposite.

Paragraph 43 – Mr. Casada acknowledges that Mrs. Smith testified as described, but disputes that he "brought up the lucrative side of doing the work" or that he wanted Phoenix Solutions to "grow quickly."

Paragraph 45 – Mr. Casada acknowledges that Mrs. Smith testified as described but disputes that REA and RightWay were "pass through conduits" or that they received "kickbacks."

Paragraph 50 – Mr. Casada admits that Cothren made the statements attributed to him but denies that he "referred Krauss to Redbird Strategies to avoid being publicly linked." More broadly, Mr. Casada objects to any reference to Redbird Strategies and Bulletproof Research as not relevant to "offense conduct."

10

Case 3:22-cr-00282    Document 416    Filed 09/05/25    Page 10 of 13 PageID #: 6420

Paragraph 61 - Mr. Casada acknowledges that Mrs. Smith testified as described, but disputes that he made any agreements regarding who was the "least conspicuous."

Paragraph 62 – Mr. Casada acknowledges that Mrs. Smith testified as described, but disputes any agreement with Smith, that any actions were taken to hide or shield Casada's "role" in Phoenix Solutions (as opposed to Cothren's role), and that any State official approved mail vendors.

Paragraph 63 - Mr. Casada acknowledges that Mrs. Smith testified as described, but disputes he agreed to incorporate taxes into the overall cost of services.

Paragraph 70 – This paragraph should reflect that Mr. Casada earned approximately $4600 from Mailer Program clients and $7100 in total for his work related to Phoenix Solutions.

**Fine, Forfeiture and Release Conditions**

The PSR recommends a fine of $75,000. In light of Casada's age, lack of steady income, and the reality that he has passed his peak earning years, Casada opposes the imposition of a fine.

The PSR recommends forfeiture but does not provide a forfeited amount. Casada objects to forfeiture in the amount beyond the $4600 he received from Phoenix Solutions related to PPA work.

The PSR at Standard Condition 7 requires full-time employment. Mr. Casada objects to this condition and/or requests an exemption from the standard condition. Mr. Casada is 66 years old and works in a VRBO business with his wife. Due to his age and stability, it is not necessary that he be mandated to work a set number of hours per week.

The PSR also recommends two (2) Special Conditions related to furnishing financial records and incurring debt/lines of credit. Casada objects to these conditions insofar as they seem

11

to be only related to payment of a fine. As Mr. Casada has objected to the imposition of a fine, he similarly objects to these conditions. Should the Court impose a fine, Mr. Casada requests that the conditions be amended to dissolve when the fine is paid in full.

Respectfully submitted,

*/s/ Jonathan Farmer*
Ed Yarbrough (BPR #004097)
Jonathan P. Farmer (BPR #020749)
Chase Fann (BPR #036794)
511 Union St, Suite 1000
Nashville, TN 37219
(P) 615-238-6300
eyarbrough@spencerfane.com
jfarmer@spencerfane.com
cfann@spencerfane.com
*Counsel for Glen Casada*

# CERTIFICATE OF SERVICE

       I hereby certify that on September 5, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a Notice of Electronic Filing to the following:

Taylor J. Phillips
Assistant US Attorney
U.S. Attorney's Office - Middle District
719 Church St. Suite 3300
Nashville, TN 37203
taylor.phillips@usdoj.gov

John P. Taddei
Blake J. Ellison
Trial Attorneys
Public Integrity Section, Criminal Division
U.S. Department of Justice
1301 New York Ave., NW
Washington, DC 20530
john.taddei@usdoj.gov
blake.ellison@usdoj.gov

                                                                                    */s/ Jonathan Farmer*
                                                                                     Jonathan Farmer

13

Case 3:22-cr-00282   Document 416   Filed 09/05/25   Page 13 of 13 PageID #: 6423