IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:22-cr-00282 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| [2] CADE COTHREN | ) | |
| | ) | |

**UNITED STATES' OPPOSITION TO DFENDANT COTHREN'S
EXPEDITED MOTION TO INTERVIEW ALTERNATE JUROR**

Days before his sentencing, and months after he first had contact with her, Defendant Cothren seeks leave for his counsel to ask an alternate juror unspecified questions. (D.E. #418, the "Motion to Interview.") The Motion to Interview cites no legal support for the request. As set forth below, Federal Rule of Evidence 606(b) and District practice counsel against the relief Cothren seeks. The Court should deny his Motion to Interview and, consistent with LR 39.01(g)(2), prohibit Cothren from further communication with Juror #13 without leave of the Court.

FACTUAL BACKGROUND

A member of the public who attended Cothren's trial—but who apparently did not know Cothren previously—"became very good friends" with him within weeks of the May 16 verdict. (D.E. #418, Exhibit 1.) They became so close that, by June, this private citizen spoke to Cothren "multiple times a day, almost as a mentor." (*Id.*) In early June, Cothren knew that this person intended to contact jurors from his trial. (*Id.*, at 5.) By late June, the private citizen appears to have found Juror #13's phone number and texted her. (*Id.*, at Ex. 1.) Juror #13 was an alternate who did not participate in deliberations or take part in reaching the verdict.

The private citizen's text caused Juror #13 to send Cothren a Facebook message on July 1. (*Id.*, at Ex. 1.) The defendant's reply to Juror #13 is unknown. So too are any other communications between them from July 1 to the present—or between Cothren and the private citizen who first

contacted Juror #13—except that Juror #13 appears to have written a letter of support for Cothren at some point during the last two months. (*Id.*, at Ex. 2.) Cothren's counsel notified the government of this correspondence and Juror #13's letter yesterday, September 8.

## ARGUMENT

"[I]t is well established that trial judges exercise their discretion in permitting the post-verdict interrogation of jurors." *United States v. Franks*, 511 F.2d 25, 38 (6th Cir. 1975). Such interviews are disfavored, however: "[a]llegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process." *Tanner v. United States*, 483 U.S. 107, 120 (1987). "A principal purpose of refusing a request to interrogate a jury following the verdict is to prevent 'fishing expeditions in search of information with which to impeach jury verdicts.'" *Tschira v. Willingham*, 135 F.3d 1077, 1089 (6th Cir. 1998) (quoting *United States v. Davila*, 704 F.2d 749, 754 (5th Cir.1983)).

In this case, Federal Rule of Evidence 606(b) and this District's typical practice each militate against Cothren's Motion to Interview. Rule 606(b) states:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Although phrased in terms of an "inquiry into the validity of a verdict or indictment," the Sixth Circuit has held more broadly that "Rule 606(b) prohibits post-verdict interrogation of jurors as to internal influences." *United States v. Logan*, 250 F.3d 350, 381 (6th Cir. 2001), *superseded on other grounds by statute as recognized in McAuliffe v. United States*, 514 F. App'x 542, 549 (6th Cir. 2013); *see United States v. Sherrill*, 388 F.3d 535, 537 (6th Cir. 2004) (affirming denial of

2

motion to interview juror based on Rule 606(b)). The purpose of this prohibition on post-verdict interviews as to internal matters "is to preserve one of the most basic and critical precepts of the American justice system: the integrity of the jury," *Logan*, 250 F.3d at 379, and to prevent the "possible exploitation of disgruntled or otherwise badly-motivated ex-jurors." *Tanner*, 483 U.S. at 124 (quoting S. Rep. No. 93–1277, at 13 (1974)).

Thus far, Cothren's interactions with Juror #13 have elicited only intrinsic information prohibited by Rule 606(b). (*See* D.E. #418, Ex. 2 (discussing Juror #13's views on the evidence and interactions with another juror).)[1] Indeed, it is unclear what relevant information Juror #13 *could* provide to Cothren's counsel which would not impinge on Rule 606(b). Instead, an interview of Juror #13 would more likely result in further potentially embarrassing allegations about another juror, forcing the other juror to either come forward or stay silent. And this embarrassment or harassment would not result in any relief for Cothren. *Sherrill*, 388 F.3d at 538 ("[E]ven if [the defendant] had presented clear evidence of a sleeping juror," it would fall within Rule 606(b)'s prohibition).

Cothren's suggestion that the interview of Juror #13 would be voluntary does not take it outside the bounds of Rule 606(b):

---

[1]  For similar reasons, the Court need not give Juror #13's letter any weight at sentencing. *See United States v. Morrison*, No. 1:11-CR-102, 2013 WL 6858473, at *2 (E.D. Tenn. Dec. 30, 2013) ("Although counsel speculates the jurors' views may be of assistance at sentencing, the Court is unable to identify any relevancy the jurors' views could bear to the Court's sentencing determination. Based upon [Rule 606(b)] it is highly unlikely anything gained from a juror could be used as evidence in Defendant's sentencing hearing . . . ."); *United States v. Vigil*, No. CR 05-2051 JB, 2007 WL 505687, at *7 (D.N.M. Jan. 10, 2007) ("Further, the parties have not cited, and the Court has not discovered in its independent research, any case discussing the propriety of allowing a juror to testify at a sentencing hearing. Nevertheless, the Court believes that the public policy underlying rule 606(b) counsels for the exclusion of juror testimony at sentencing.").

3

> Human nature is such that some jurors, instead of feeling harassed by post-trial interviewing, might rather enjoy it, particularly when it involves the disclosure of secrets or provides an opportunity to express misgivings and lingering doubts. A serious danger exists that, in the absence of supervision by the court, some jurors, especially those who were unenthusiastic about the verdict or have grievances against fellow jurors, would be led into imagining sinister happenings which simply did not occur or into saying things which, although inadmissible, would be included in motion papers and would serve only to decrease public confidence in verdicts. Thus, supervision is desirable not only to protect jurors from harassment but also to insure that the inquiry does not range beyond subjects on which a juror would be permitted to testify under Rule 606(b).

*In re Sittenfeld*, 49 F.4th 1061, 1075 n.3 (6th Cir. 2022) (quoting *United States v. Moten*, 582 F.2d 654, 665 (2d Cir. 1978)). Likewise, the fact that Juror #13 was an alternate does not change the analysis. *See United States v. Lawrence*, 477 F. Supp. 2d 864, 874 (S.D. Ohio 2006), *order vacated in part*, 555 F.3d 254 (6th Cir. 2009), and *aff'd in part*, 735 F.3d 385 (6th Cir. 2013) (holding that Rule 606(b) "implicitly prohibits this Court from interrogating an alternate juror" as to internal influences); *United States v. Taylor*, No. 1:04-CR-160, 2009 WL 311138, at *6 (E.D. Tenn. Feb. 6, 2009) ("[A]lternate and regular jurors were indistinguishable from one another except during deliberations," and therefore "evidence of . . . discussions [prior to formal deliberations] would be inadmissible under Rule 606(b).").

In addition to Rule 606(b), District practice and the Local Rules weigh against granting Cothren's Motion to Interview. Local Rule 39.01(g)(2) states:

> **Post-Verdict Interview of Jurors**. No attorney, party, or representative of either may interview a juror after the verdict has been returned without prior approval of the Court. Approval of the Court may be sought only by counsel orally in open court, or upon written motion that states the grounds and the purpose of the interview. If a post-verdict interview of one or more members of the jury is approved, the scope of the interview and other appropriate limitations upon the interview will be determined by the Judge prior to the interview.

Although grouped with the Local Civil Rules, LR 39.01(g)(2) has been applied criminally. *See United States v. London*, No. 3:22-CR-00310, 2023 WL 11996136, at *10 (M.D. Tenn. Dec. 27,

2023) ("An evident purpose of this rule is to prevent fishing expeditions and violations of Rule 606(b)."). Here, Cothren has identified no scope of the proposed interview other than broadly seeking information "that may be relevant to Mr. Cothren's sentencing," and he proposes no limitations. (D.E. #418, at 2.)

As set forth above, Cothren's Motion to Interview identifies no colorable basis to believe that Juror #13's testimony would demonstrate a likelihood that the jury's verdict was affected by extraneous information. *See United States v. Gonzales*, 227 F.3d 520, 527 (6th Cir. 2000) ("A hearing is required only when there is a colorable claim of extraneous information that 'presents a likelihood of affecting the verdict'" (citation omitted)). Accordingly, consistent with the principles of LR 39.01(g)(2), the Court should deny Cothren's Motion to Interview and prohibit Cothren from further communication with Juror #13 without leave of the Court.

Respectfully submitted,

ROBERT E. McGUIRE
Acting United States Attorney for the
Middle District of Tennessee

*/s/ Taylor J. Phillips*
TAYLOR J. PHILLIPS
Assistant United States Attorney
719 Church Street, Ste 3300
Nashville, Tennessee 37203
Telephone: 615-736-5151

*/s/ John P. Taddei*
JOHN P. TADDEI
Trial Attorney
Criminal Division
United States Department of Justice
